### PEOPLE v NKOMO

1. CRIMINAL LAW—DISCOVERY—DISCRETION OF TRIAL COURT—MOTIONS—COURT RULES.

   A discovery motion in a criminal case is addressed to a trial court's sound discretion because the discovery rules of the General Court Rules expressly exclude criminal cases (GCR 1963, 785.1[2]).

2. CRIMINAL LAW—DISCOVERY—BURDEN OF SHOWING SPECIFIC FACTS —BROAD ALLEGATIONS.

   The defense in a criminal action seeking discovery of documents and reports in the hands of the prosecutor carries the burden of showing the trial court specific facts indicating that such information is necessary to a preparation of its defense and in the interests of a fair trial, and not simply a part of a fishing expedition; a broad allegation that such documents and reports are needed to properly prepare for cross-examination of prosecution witnesses is not sufficient to compel discovery.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—CONFESSIONS—MIRANDA RIGHTS—IMPEACHMENT.

   A voluntary confession that is obtained from a defendant in violation of his *Miranda* rights cannot be used in the prosecution of the case in chief, but may be used for impeachment purposes if the defendant chooses to take the stand and deny his guilt; however, involuntary statements of a defendant are inadmissible.

4. WITNESSES—CRIMINAL LAW—INVOLUNTARY STATEMENTS—IMPEACHMENT EVIDENCE—CASE PRECEDENT—PRESERVING QUESTION— PRIOR INCONSISTENT STATEMENTS.

   Case precedent limiting the use of a defendant's involuntary statements for impeachment purposes should not be extended

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 23 Am Jur 2d, Depositions and Discovery § 307 *et seq.*

[3–6] 29 Am Jur 2d, Evidence §§ 555–557, 596.

Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.

[5] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

to limit, on a claim of coercion, the admissibility of impeachment evidence regarding prior inconsistent statements of a defense witness in a bench trial where no objection was made to the court's denial of a motion to strike.

5. CRIMINAL LAW—APPEAL AND ERROR—EVIDENCE—IMPEACHMENT
   TESTIMONY—MOTION TO STRIKE—PRESERVING QUESTION.

   Absent a showing of manifest injustice the Court of Appeals will not reverse a defendant's conviction because of a trial court's denial of a defense motion to strike a police officer's impeaching testimony as to a defense witness's prior inconsistent statements which were allegedly made under coercion from the police where no objection was made to the court's ruling.

6. WITNESSES—CRIMINAL LAW—EVIDENCE—FOUNDATION—PRIOR IN-
   CONSISTENT STATEMENTS—IMPEACHMENT EVIDENCE.

   A proper foundation for a police officer's testimony as to a defense witness's prior inconsistent statements, which were offered in evidence to impeach the witness, was laid where the prosecution confronted the witness with the statements and the witness denied them; therefore, admission of the evidence was within the trial court's discretion.

Appeal from Oakland, William R. Beasley, J. Submitted January 11, 1977, at Lansing. (Docket No. 27215.) Decided April 18, 1977.

Leo U. Nkomo, also known as Gregory Williams, was convicted of three counts of first-degree criminal sexual conduct and two counts of kidnapping. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Michael C. Leibson,* Assistant Prosecuting Attorney for the people.

*Waterman & Campbell,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P. J., and V. J. BRENNAN and BRONSON, JJ.

V. J. BRENNAN, J. Defendant Leo Urundi Nkomo a/k/a Gregory Williams is charged with three counts of first-degree criminal sexual conduct involving acts of rape, fellatio and sodomy, contrary to MCLA 750.520b; MSA 28.788(2), and two counts of kidnapping, contrary to MCLA 750.349; MSA 28.581. On September 25, 1975, defendant was tried and convicted before Oakland County Circuit Judge William Beasley. Defendant was sentenced on November 18, 1975, to a prison term of 20 to 40 years on the three counts of criminal sexual conduct and, concurrently, to 5 to 10 years on the charge of kidnapping. The appeal is of right.

The charges arose out of an incident occurring on the evening of May 27, 1975. Two teenage boys, Ernie Clark and Billy Huff, were walking on Woodward Avenue about 11 p.m. An automobile stopped alongside them and two men, later identified as defendant and a companion, Marvin Hammond, ordered them at riflepoint inside the vehicle. After establishing that the two boys had little money to take and that they lived nearby, the two men forced the boys to direct them to their home.

Once there, the two men noticed a light burning inside, and discovered from the boys that Clark's married sister, Mrs. Genevieve Caroline Harvey, had probably returned home with her children. Defendant told Huff, Mrs. Harvey's cousin, to approach the house and tell her that someone in the car desired to meet her.

The boy did as ordered and Mrs. Harvey, seeing how frightened her cousin was, went to the car. Mrs. Harvey was dressed only in a nightgown. The two men forced her into the car with the two boys and drove off. After a short distance, they let the boys out. Mrs. Harvey was then forced to perform an act of fellatio on defendant. Afterward, they

took her to the basement of a home later established to be that of defendant's mother. She was then forced to engage in further acts of fellatio, sodomy and intercourse.

After promising not to report this incident to police, Mrs. Harvey was released. Upon arriving home, she was met by her brother and cousin, who had reported Mrs. Harvey's disappearance to police. The three returned to the police precinct to report the facts of the attack and Mrs. Harvey was taken to Beaumont Hospital for examination and tests. She then took police to the house where the assaults occurred and defendant was arrested.

Before trial, defense counsel moved for the discovery of particular items of evidence obtained by police during their investigation, among them being police reports to superior officers, police write-ups presented to the prosecution and police resumés. At the commencement of trial, the court heard arguments on the matter and ruled that the evidence need not be produced at that time. However, the trial judge did state that he might later order their production if the materials proved necessary to defendant in cross-examination of prosecution witnesses.

Defendant testified at trial that he had known Mrs. Harvey previously. He stated that she had been a prostitute and defendant had had sexual relations with her on numerous occasions. Defendant testified that she had voluntarily accompanied him on the night of the crime. This testimony was corroborated by defendant's family and accomplice Hammond.

However, during cross-examination, accomplice Hammond admitted that he had gone to the police after defendant's arrest. Contrary to prior trial testimony, Hammond testified to giving police a

statement at that time supporting charges against defendant. However, he said that this information had been coerced under various threats by police officers during interrogation. He stated that he had originally told police the account given on direct examination, but changed his statement after apparent physical threats and threats of prosecution.

According to police testimony, Hammond had been told only that if he refused to tell the truth, he would be charged. He was not given *Miranda* warnings because police had not originally intended to prosecute him. No notes of this interview had been taken, although a tape recording had been made. After hearing the tape, defense counsel moved to strike all testimony concerning Hammond's statements to police on grounds that they were involuntarily given. The court denied the motion, indicating that the statements might properly be used to impeach the witness and that circumstances surrounding the statement did not justify their exclusion as long as they were merely weighed to determine the value of Hammond's prior testimony.

On appeal, defendant brings two allegations of error. We will deal with them in order.

Defendant first argues that reversible error occurred when the trial court denied his motion to have the prosecutor produce police reports to superior officers, police write-ups presented to the prosecutor, and police resumés. We do not agree.

GCR 1963, 785.1(2) expressly excludes the application of discovery rules in criminal cases. A discovery motion in a criminal case, then, is addressed to the trial court's sound discretion. *People v Maranian,* 359 Mich 361, 368–369; 102 NW2d 568 (1960), *People v Johnson,* 356 Mich 619, 628;

97 NW2d 739 (1959). See also *People v Rodriguez,* 65 Mich App 723, 728–729; 238 NW2d 385 (1975), *People v Ranes,* 58 Mich App 268, 274; 227 NW2d 312 (1975).

An examination of the facts in this case leads us to the conclusion that the trial court did not abuse its discretion in denying defendant's discovery motion. Defendant simply failed to convince the court that the requested discovery was necessary prior to trial. The broad allegation that such documents and reports were needed to properly prepare for cross-examination of prosecution witnesses is not sufficient to compel such discovery.

As noted by the prosecutor, the Michigan Supreme Court has held that the defense carries the burden of showing the trial court *specific facts* "indicating that such information is necessary to a preparation of its defense and in the interests of a fair trial, and not simply a part of a fishing expedition". *Maranian, supra,* at 368. In the present case, the record reflects that the defense did not set forth any specific facts or information which it expected to glean from these reports.

Furthermore, the trial court did not completely eliminate discovery. The court did provide that the requested materials might be produced at the time of the cross-examination of such witnesses if defense counsel could establish a need for these materials at such a time. In fact, defense counsel availed himself of this opportunity during his cross-examination of Officer Stanley Sullivan. At that time, defense counsel requested and was permitted to examine the preliminary complaint report authored by Officer Sullivan. He then questioned the officer with respect to this report.

He also was permitted to examine and listen to the taped interview involving Officer Brown and

defendant's accomplice Hammond. Officer Brown indicated that this tape represented his entire connection with the investigation, as he had taken no notes. In light of these facts, we believe the court may well have permitted defense counsel to obtain any of the other previously requested materials if they had been necessary to fully cross-examine the witnesses at trial.

We note as well that one recent case parallels closely the facts of this matter. *People v Ranes, supra,* at 273–274. In that case, the trial court denied defendant's motion for production of copies of all statements, reports, notes or tapes made or given by witnesses. In doing so, however, the court indicated that any statement, report, note or tape made or given by witnesses was to be provided if needed to refresh the recollection of such witnesses at trial.

On appeal, this Court affirmed the lower court ruling on grounds the trial court had not completely eliminated the discovery of those materials and did permit production of them if they were needed. *Ranes, supra,* at 274. We find no distinction in principle between these facts and the present matter. Therefore, we decline to reverse on this basis.

Defendant next contends reversible error occurred when the trial court permitted the prosecution to impeach the testimony of accomplice Hammond through use of his prior inconsistent statements to police which were given in violation of *Miranda.*[1]

Relying on precedent from the United States Supreme Court, the prosecution argues that Officer Brown's testimony could properly be admitted to impeach Hammond's testimony. *Harris v New*

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

*York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971). The testimony offered by Brown concerned the prior inconsistent statement given by Hammond during the police interview on May 28, 1975, the day after the crime was committed and defendant arrested. An examination of the facts leads us to believe *Harris* does not directly bear on introduction of Officer Brown's testimony.

In *Harris,* the Supreme Court held that where a confession is obtained from a *defendant* in violation of his *Miranda* rights, such a confession cannot be used in prosecution of the case in chief, but may be used for impeachment purposes if the *defendant* chooses to take the stand and deny his guilt.

We also note defendant's incriminating statements or confession are not admissible where such statements or confession were involuntary. *People v Reed,* 393 Mich 342, 355–357; 224 NW2d 867 (1975). In *Reed,* the Michigan Supreme Court distinguished between the introduction for impeachment purposes of voluntary statements or a voluntary confession obtained from a testifying *defendant* where *Miranda* warnings were not given and involuntary statements or confession where such warnings were not provided. *Reed, supra,* at 355–356. Thus, the present matter involves an issue apparently similar to *Reed.*

To apply *Harris* or the principle announced in *Reed* to this case would involve an extension of the law we are not willing to make. What defendant would have us do would be to limit, on a claim of coercion, the admissibility of impeachment evidence regarding prior inconsistent statements of a defense *witness* in a bench trial where no objection was made to the court's denial of a motion to strike. We feel taking such a step would be improper.

The trial court was in a position to hear all of the arguments upon the alleged coercion. He heard the trial testimony of witness Hammond, and he listened to the taped conversation between witness Hammond and the officers at the station-house. He noted that witness Hammond had voluntarily appeared to offer himself for questioning. Further, the officers specifically told Hammond that he was not being charged at the time. As a result, he was not informed of his *Miranda* rights. If we were to characterize the proceeding at this stage, we would conceive it as purely investigatory and not accusatory *as to witness Hammond's involvement.* Nevertheless, we will assume a violation of *Miranda* for purposes of argument.

We realize the situation was one where utmost care was necessary. Hammond was a minor and perhaps more susceptible to persuasion than an older man might have been. We also believe the comment by Lieutenant Sullivan implying Hammond was not being truthful and informing him of the possibility of being charged was imprudent at best. However, we do not believe error was committed when the very able trial judge sitting without a jury carefully weighed the evidence of possible coercion and ruled against defendant's motion to strike Officer Brown's testimony.

He was very clear in his ruling on the motion as to the basis for his denial:

"To rule on the objection and the motion to strike, I think I do have to consider the context. The witness was called by the defense and he did testify under oath as to his version of what happened on the night in question. *He is not a defendant.*

"Then the prosecutor undertook to impeach that testimony and to attack his credibility by offering testimony of an allegedly earlier inconsistent statement.

"I think in this context that the prosecution are *[sic]* entitled to offer the testimony as to what allegedly happened in the police station. I don't think the objection really goes to the admissibility.

"I am going to deny the objection and deny the motion to strike. I think the argument really goes to the weight that the Court should give to a statement taken under the circumstances indicated here of a very young witness in the police station." (Emphasis added.)

Given that defendant made no objection to the court's ruling, we will not reverse unless manifest injustice appears. *People v Dorrikas,* 354 Mich 303, 316; 92 NW2d 305 (1958). By very particularly noting the distinction here where impeachment of a witness's testimony, and not defendant's testimony, is involved, we feel the court was correctly apprised of the problem and what we feel is the determining consideration.

Concerning the question whether a proper foundation for the impeaching testimony was laid, we believe such foundation was laid when prosecution confronted defense witness with his prior incriminating statements and defense witness denied them. *People v Dozier,* 22 Mich App 528, 530–532; 177 NW2d 694 (1970), *People v Graves,* 15 Mich App 244, 246; 166 NW2d 480 (1968). Admission was therefore proper in the court's discretion. *People v Hunt,* 30 Mich App 94, 96; 186 NW2d 34 (1971).

In conclusion, we believe *Reed* cannot be extended to apply to the testimony of a witness defendant himself called in a bench trial where no objection was made to denial of his motion to strike. We perceive no manifest injustice here.

Affirmed.