PEOPLE v COX

Docket No. 77-1780. Submitted June 23, 1978, at Detroit.—Decided on
    August 22, 1978.

Defendant, Michael Cox, was convicted of careless discharge of a
    firearm resulting in death in Recorder's Court of Detroit,
    Thomas G. Smith, J. The trial court refused to allow evidence
    of an interview of the defendant by a psychiatrist while the
    defendant was under the influence of a so-called "truth serum"
    drug and evidence of the psychiatrist's opinion based on that
    interview. Defendant appeals. *Held:*

> There must be a showing of general scientific reliability of
> truth serum tests before their results can be properly admitted
> into evidence, and the evidence was properly excluded where
> the psychiatrist admitted that there was no medical evidence or
> studies on the reliability of the drug used as a "truth serum".
> Affirmed.

EVIDENCE—SCIENTIFIC TESTS—TRUTH SERUM TESTS.

> There must be a showing of general scientific reliability of truth
> serum tests before their results can be properly admitted into
> evidence.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*Alvin C. Sallen,* for defendant.

Before: D. C. RILEY, P. J., and M. F. CAVANAGH and B. M. HENSICK,* JJ.

REFERENCES FOR POINTS IN HEADNOTE

29 Am Jur 2d, Evidence § 831.

Physiological or psychological truth and deception tests. 23 ALR2d
1306.

* Circuit judge, sitting on the Court of Appeals by assignment.

D. C. RILEY, P. J. This case involves a matter of first impression in Michigan, namely the admissibility of expert testimony concerning the results of and conclusions drawn from an interview with the defendant conducted while defendant was under the influence of brevital sodium, a so-called "truth serum" drug.

Defendant Michael Cox was tried on a charge of second-degree murder, MCL 750.317; MSA 28.549, and convicted of the lesser offense of careless discharge of a firearm resulting in death. MCL 752.861; MSA 28.436(21). He was sentenced to one year of detention in the Detroit House of Correction and a $1,000 fine.

The incident in question began when both defendant and decedent, and several friends of both, stopped to aid a disabled motorist. An altercation ensued between defendant and decedent, with defendant eventually being pushed by decedent into the on-coming traffic lane, and culminating in the shooting which caused decedent's fatal injury.

Defendant testified that after decedent pushed him into the road, he saw decedent approaching him armed with a baseball bat. Defendant asserted that he fired the fatal shots in self-defense. There was conflicting testimony from other witnesses as to whether decedent, or anyone present, was armed with a bat. However, at the scene of the shooting, the police found a bat in the car of decedent's friend.

At trial the defense sought to introduce the testimony of a psychiatrist who had interviewed defendant after administering a dose of brevital sodium. On a special record the tape recording of that interview was played. The psychiatrist testified that in his opinion the defendant truthfully believed that he had seen decedent armed with a

baseball bat. The psychiatrist testified also that his opinion was based solely upon this interview. The trial court ruled that the tape and the testimony concerning the results of the interview and the psychiatrist's opinion were inadmissible. The psychiatrist was allowed to testify generally on certain psychiatric conditions and occurrences, but without reference to defendant or the particular case.

As stated previously, no Michigan case has as yet dealt specifically with the admissibility of the results of a truth serum test. Therefore, we must look for the standards for admissibility by analogy to similar forms of scientific testing evidence. The most appropriate analogy is to polygraph evidence.

The standard for admissibility of polygraph results is the so-called *Davis/Frye* test, which was recently reaffirmed by the Supreme Court in *People v Barbara,* 400 Mich 352, 357–358; 255 NW2d 171 (1977):

"The Michigan test presently applied to determine the admissibility of polygraph testimony is that which we enunciated in *People v Becker,* 300 Mich 562, 566; 2 NW2d 503 (1942), and repeated with approval in *People v Davis,* 343 Mich 348, 370; 72 NW2d 269 (1955), that there be:

" 'testimony offered which would indicate that there is at this time a general scientific recognition of such [polygraph] tests. Until it is established that reasonable certainty follows from such tests, it would be error to admit in evidence the result thereof.'

"In *Becker* and in *Davis* we concluded that 'the results of such tests have not, as yet, reached the stature of evidence admissible in a court of law'. 343 Mich 370.

"This follows the traditional test used in other jurisdictions, which, as originally set forth in *Frye v United*

*States,* 54 US App DC 46, 47; 293 F 1013, 1014 (1923), requires:

" '[W]hile courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.' " 400 Mich at 357–358.

Tests similar to the *Davis/Frye* standard, which require a showing of a general scientific reliability of truth serum tests prior to admission of the evidence, have been employed by other states which have ruled on evidence obtained by the use of such drugs. See *Cain v State,* 549 SW2d 707 (Tex Crim App, 1977), *State v Linn,* 93 Idaho 430; 462 P2d 729 (1969), *State v White,* 60 Wash 2d 551; 374 P2d 942 (1962), *People v Ford,* 304 NY 679; 107 NE2d 595 (1952). The large majority of states which have applied this type of standard to truth serum evidence has found it lacking in scientific recognition and accordingly excluded it from admission. See 3 Wharton's Criminal Evidence (13th ed), § 630, pp 249–253; Anno: *Admissibility of physiological or psychological truth and deception test or its results to support physician's testimony,* 41 ALR3d 1369.

Applying this test to the case at bar, we find that the trial judge correctly ruled that the results of the brevital sodium test, and the witness's opinions relating to those results, were inadmissible. The psychiatrist himself admitted upon inquiry from the court that there was no medical evidence or studies on the reliability of this drug as a truth serum. Absent such evidence, the court was obligated to rule that the testimony was too

uncertain to be allowed before a jury, where it would have had a potentially significant impact.[1]

Affirmed.

---

[1] This result is not altered by the recently adopted Michigan Rules of Evidence. MRE 702 reads:

"If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The scientific recognition standard adopted in this opinion for the admissibility of truth serum evidence is expressly included within the rule.