## PEOPLE v FOURNIER

Docket No. 77-5035. Submitted June 14, 1978, at Grand Rapids.— Decided November 6, 1978.

Robert Fournier was convicted of voluntary manslaughter in the Kalamazoo Circuit Court, Patrick H. McCauley, J. Defendant appeals. *Held:*

1. The trial court's failure to repeat the fact that the jury could find defendant not guilty at the close of the instructions was a mere oversight that did not mislead the jury. The instructions as a whole adequately informed the jury that they could bring in a verdict of not guilty and counsel did not object to the instructions.

2. The trial court's erroneous instruction regarding the presumption of malice where a death results from an assault with a deadly weapon was harmless error since the jury found the defendant guilty of manslaughter and thereby indicated that they found no malice.

3. The trial court did not err in excusing the prosecution

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 762.
[2] 40 Am Jur 2d, Homicide §§ 45, 509.
[3] 40 Am Jur 2d, Homicide § 42.
[4] 40 Am Jur 2d, Homicide §§ 500, 569.
[5] 75 Am Jur 2d, Trial § 43.
  81 Am Jur 2d, Witnesses §§ 2, 74.
[6] No Reference
[7] 75 Am Jur 2d, Trial § 771.
[8] 81 Am Jur 2d, Witnesses § 472.
[9] 5 Am Jur 2d, Appeal and Error § 776.
[10] 29 Am Jur 2d, Evidence §§ 876, 877.
[11] 29 Am Jur 2d, Evidence § 831.
  40 Am Jur 2d, Homicide § 488.
  Physiological or psychological truth and deception tests. 23 ALR2d 1306.
[12] 21 Am Jur 2d, Criminal Law § 324.
  23 Am Jur 2d, Depositions and Discovery § 307.
[13] 4 Am Jur 2d, Appeal and Error § 18.
[14] 40 Am Jur 2d, Homicide §§ 56-59.
[15] 58 Am Jur 2d, New Trial § 189.
[16] 21 Am Jur 2d, Criminal Law §§ 234, 235.

from producing a witness and in ruling that the people had exercised due diligence by their efforts to produce the witness.

4. Any error in initially denying defense counsel access to letters written by the defendant when they were first presented to refresh his memory was harmless error since it did not amount to a manifest injustice and defendant was not prejudiced by the erroneous ruling.

5. The court did not err in preventing a defense expert witness from testifying as to his opinion which had been formed as a result of information obtained while defendant was under the influence of sodium brevital since such truth serum drugs have not been proven reliable by medical evidence or studies and, therefore, the testimony was too uncertain.

6. The trial court abused its discretion in denying defense counsel access to reports regarding the deceased having a knife in his possession at the time of the shooting. The error was harmless however, since defendant testified that he saw something in the hand of the deceased, but did not know what it was, and two police officers testified that a knife was taken from the right front pocket of the deceased in the hospital emergency ward, thus bringing that fact before the jury to consider.

Affirmed.

1. Appeal and Error—Trial—Jury Instructions—Not Guilty Instruction.

A trial court did not commit reversible error in failing to repeat, at the close of the jury instructions, the fact that the jury could find the criminal defendant not guilty where the entire panel was advised of this basic rule before the jury was selected, the court began its instructions to the jury by saying that if the prosecutor did not prove the defendant guilty beyond a reasonable doubt the jury must find him not guilty, where the instructions as a whole did not mislead the jury and adequately informed the jury that they could bring in a verdict of not guilty, and where defense counsel made no objections to the instructions.

2. Homicide—Murder—First-Degree Murder—Second-Degree Murder—Elements—Malice—Jury—Inferences—Presumptions of Law.

Malice is an element of the crime of first and second-degree murder; the determination of this element must be made by a jury; Michigan has long considered malice a permissible infer-

ence to be drawn by the jury rather than as a presumption of law.

3. HOMICIDE—VOLUNTARY MANSLAUGHTER—MURDER—MALICE.

Voluntary manslaughter is distinguished from murder by the absence of the element of malice.

4. APPEAL AND ERROR—TRIAL—HOMICIDE—CHARGE TO JURY—FIRST-DEGREE MURDER—ASSAULT—DEADLY WEAPONS—MALICE—PRESUMPTIONS—VOLUNTARY MANSLAUGHTER.

A trial court's erroneous charge to the jury was harmless error, in a trial for first-degree murder, where the jury was instructed that where a death results from an assault where a deadly weapon is used, and there is no evidence to the contrary, the presumption is that the death was inflicted with malice, and where the jury found the defendant guilty of voluntary manslaughter thus indicating that they found no malice.

5. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—PROSECUTOR'S DUTY—DUE DILIGENCE—COURT'S DISCRETION.

A prosecutor has an affirmative duty to indorse and produce all res gestae witnesses to a crime at the time of the trial; the question of whether due diligence has been shown in producing such witnesses is a matter for the discretion of the trial court whose decision will be overturned on appeal only where a clear abuse of discretion is shown.

6. WORDS AND PHRASES—DUE DILIGENCE.

Due diligence in law means doing everything reasonable, not everything possible.

7. WITNESSES—CRIMINAL LAW—TRIAL—WITNESSES—PROSECUTORS—DUE DILIGENCE—JURY—ADVERSE WITNESSES.

It is not error for a trial court to refuse to compel the prosecution to call witnesses whose names are indorsed on the information but who are not within the state and answerable to process of the court; it is permissible for a court to submit the question of the prosecutor's due diligence in producing such a witness to the jury with instructions that if they find that the prosecutor failed to employ due diligence they may consider that the witness, if called, would be adverse to the people.

8. CRIMINAL LAW—TRIAL—CROSS-EXAMINATION—TRIAL COURT'S DISCRETION—HARMLESS ERROR—MANIFEST INJUSTICE.

The extent and control of cross-examination in a criminal prosecution is within the discretion of the trial court: an error in the admission or exclusion of evidence will result in harmless error

and will not require reversal unless it results in manifest injustice.

9. APPEAL AND ERROR—HARMLESS ERROR—TEST.

A two-pronged test is used to determine whether an error committed in a trial is harmless or reversible error: first, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless, and second, if not so basic, can the appellate court declare a belief that the error was harmless beyond a reasonable doubt; the purpose of the first step is to deter prosecutorial misconduct and to safeguard those individual rights which are so fundamental that the impact of their violation cannot be fully assessed.

10. WITNESSES—TESTIMONY FROM MEMORY—MEMORY REFRESHED BY WRITING—EVIDENCE.

The testimony of a witness who testifies from memory, after being refreshed by a writing, is what is introduced into evidence, not the writing itself.

11. HOMICIDE—APPEAL AND ERROR—FIRST-DEGREE MURDER—EVIDENCE—EXPERT WITNESSES—TRUTH SERUMS—RELIABILITY.

A trial court did not err, in a trial for first-degree murder, by preventing a defense expert witness from testifying as to his opinion, which had been formed as a result of information obtained while the defendant was under the influence of sodium brevital, a so-called "truth serum" drug, since such truth serums have not been shown to be reliable through medical evidence or studies, and therefore, the testimony was too uncertain to be allowed before the jury.

12. CRIMINAL LAW—EVIDENCE—DISCOVERY—ADMISSIBILITY—FAIRNESS TO DEFENDANT.

Discovery is not limited to whether the information sought is admissible at trial; the focus is upon whether fundamental fairness to a criminal defendant in preparing his defense requires that he have access to the requested information.

13. APPEAL AND ERROR—HOMICIDE—ABUSE OF DISCRETION—FIRST-DEGREE MURDER—EVIDENCE—HARMLESS ERROR.

A trial court's abuse of discretion in a trial for first-degree murder, in denying defendant's attorney access to reports regarding the deceased having a knife in his possession at the time of the shooting, was harmless error where the defendant testified on direct examination that he saw something in the deceased's hand but did not know what it was, and where the fact that the deceased had such a knife was before the jury to

consider since two police officers testified that a knife was taken from the right front pocket of the deceased in the emergency ward of the hospital.

14. HOMICIDE—VOLUNTARY MANSLAUGHTER—WORDS AND PHRASES.
   Voluntary manslaughter is the killing of another intentionally, but in a sudden heat of passion, due to adequate provocation, but without malice.

15. NEW TRIAL—DELAYED MOTION FOR NEW TRIAL.
   The Michigan Supreme Court does not look with favor upon a long-delayed motion for a new trial.

16. CRIMINAL LAW—TRIAL—FAIR TRIALS—PERFECT TRIALS.
   A person charged with a crime is entitled to a fair trial, not a perfect one.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, *Stephen M. Wheeler,* Chief of Appellate Division, and *Judy A. Hughes,* Assistant Prosecuting Attorney, Appellate Division, for the people.

*DeVries & Lamb, P.C.,* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and W. VAN VALKENBURG,* JJ.

W. VAN VALKENBURG, J. Defendant was charged with the first-degree murder of Anthony Doss, contrary to MCL 750.316; MSA 28.548, but was convicted on November 7, 1975, following an 11 day jury trial, of voluntary manslaughter. He was sentenced on December 8, 1975, to 10 to 15 years and was given credit for 420 days spent in the county jail, with the further recommendation that he should not be paroled and that he be deported from the country.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

A motion for a new trial was argued on September 20, 1977, and denied on October 25, 1977. The appeal to this Court followed as of right.

The shooting, which was an outgrowth of an "eternal triangle", occurred on October 14, 1974, and Doss died on November 5, 1974. The three principals include: the deceased, who was pictured during the lengthy trial as a brutal thug; defendant, who appeared to be psychotic and could not live with the fact that women were not attracted to him; and the necessary woman, Sally Schippers, who was characterized as a fickle jezebel who had two fiances at the same time and led each of them to believe that she would marry him.

There is some confusion concerning the events on the 14th which led up to the shooting. However, the two men confronted each other, either at the residence of Sally Schippers or at the gas station where the deceased was employed. Thereafter, defendant returned to his mother's home, obtained a 12-gauge shotgun and headed for the station where he kidnapped Sally at gunpoint and drove off in a red car. Doss followed and finally caught up with him at the intersection of West Michigan Avenue and South Park Street in downtown Kalamazoo. At this point the deceased rammed defendant's car several times. The latter, finding that his steering gear was jammed, shot twice through the rear window of the Doss vehicle, reloaded the gun, exited from his car and ran south on Park Street. Doss followed him in his car driving the wrong way up Park Street, a one-way street, to the vicinity of Bronson Park, which is one block south of Michigan Avenue. There is some evidence that Doss was attempting to run the defendant down, but was prevented from doing so when he collided with a lamppost. He immedi-

ately exited from his automobile and, while attempting to approach defendant, was shot in the stomach.

A state police firearms expert testified at trial that three 12-gauge shotgun shells were found at the scene of the crime and that the tests showed that they matched the ones later fired from the gun.

The prosecution alleged that the acts of defendant were willful, deliberate and premeditated.

Defendant, on the other hand, claimed that at the time of the shooting he was acting in self-defense out of fear of the deceased, and that his psychological makeup was such that he could not form the intent to kill anyone.

The six issues raised by the defendant on appeal will be considered *seriatim*.

I

This issue is divided into two parts: (A) Did the trial court err in failing to advise the jury that they could return a general verdict of not guilty? (B) Was the burden of proof shifted to defendant when the trial judge gave his instruction on malice?

There is an admission in defendant's brief that the court did begin his instructions by saying "that if the prosecutor did not prove the defendant guilty beyond a reasonable doubt, the jury must find him not guilty".

This statement was followed up in the general instructions on presumption of innocence, burden of proof, and reasonable doubt as follows:

"Each and every one of you must be satisfied beyond a reasonable doubt after deliberating that the defend-

ant is guilty or you must find him not guilty. You must begin this trial with these principles foremost in your mind. * * * The burden of proof means that every element of the offense charged must be proven by evidence beyond a reasonable doubt. By stating that the prosecution must prove the guilt beyond a reasonable doubt I mean that there must be such evidence as causes you to have a firm conviction, amounting to a moral certainty of the defendant's guilt. If after considering all the evidence you do not have such a certainty, then that is a reasonable doubt."

Undoubtedly, the failure to repeat the fact that the jury could find defendant not guilty at the close of the instructions was a mere oversight. The entire panel, before any jury was selected, was advised of this basic rule. The instructions as a whole adequately informed the members of the jury that they could bring in a verdict of not guilty. Under these circumstances it cannot be concluded that the jury, which must have been composed of reasonably intelligent citizens, was misled. Furthermore, counsel did not object to the instructions.

Defendant contends that the trial court made a more serious error when it instructed the jury as follows:

"It is the law that death resulting from an assault in the absence of any proof to the contrary is presumed to be felonious either murder or manslaughter. Where the death is shown to be resulted [sic] from the use of a deadly weapon in the absence of any proof to the contrary, an absence to any testimony in relationship to that, the presumption is that the death was inflicted with malice."

This instruction was erroneous since malice is an element of the crime of first- and second-degree

murder and determination of that element must be made by a jury.

"Michigan has long ago considered malice a permissible inference to be drawn by the jury rather than a presumption of law". *People v Martin,* 392 Mich 553, 561; 221 NW2d 336 (1974).

However, voluntary manslaughter is distinguished from murder by the absence of the element of malice. *People v Townes,* 391 Mich 578, 589; 218 NW2d 136 (1974).

Here, the jury must have found that the killing, although intentional, was committed under the influence of passion or heat of blood produced by an adequate or reasonable provocation before reasonable time had elapsed for the blood to cool and reason to resume its habitual control. A finding of manslaughter indicates that the jury found no malice, thus the trial court's charge to the jury, although erroneous, constituted harmless error. *People v Swan,* 56 Mich App 22, 31; 223 NW2d 346 (1974).

## II

Did the trial court commit reversible error in excusing the prosecution from producing witness Tom Hatcher and in ruling that the people had exercised due diligence by their efforts to produce him as a witness?

Prior to the voir dire of the jury on October 22, 1975, a hearing was held to give the prosecution an opportunity to show due diligence in attempting to serve witness Tom Hatcher with a subpoena. Officer Lewandowski testified that he was aware of the fact that Mr. Hatcher had moved to Grand Rapids. He contacted Mr. Hatcher's mother there and was advised by her that the

whereabouts of her son were unknown and that according to the latest information he was in Seattle, Washington and expected to leave for other destinations very soon thereafter. The officer made two additional calls and left his address and telephone number, which would enable the mother to contact him if the location of her son became known.

The trial judge ruled that due diligence had been exercised and commented that perhaps something would be learned as to the address of the witness during the trial.

It is well established, according to both case law and statute, MCL 767.40; MSA 28.980, that the prosecutor has an affirmative duty to endorse and produce all res gestae witnesses to a crime at the time of the trial.

Application of this rule has, however, brought about different interpretations. In *People v Serra,* 301 Mich 124, 130; 3 NW2d 35 (1942), the Supreme Court stated:

"It is not error for the court to refuse to compel the prosecution to call witnesses whose names are indorsed on the information who are not within the State and answerable to process of the court."

In *People v Ivy,* 11 Mich App 427, 431; 161 NW2d 403 (1968), the witness left for New York and the prosecutor made no further efforts whatsoever to contact him. The trial court submitted the question of due diligence to the jury and instructed the members that if they found that the prosecutor had failed to employ due diligence, "they could consider that the witness, if called, would be adverse to the people". Apparently, the jury was satisfied since defendant was found

guilty. Such a procedure was held to be permissible.

In *People v Robinson,* 390 Mich 629, 634; 213 NW2d 106 (1973), the Supreme Court held that before filing a brief on appeal, a motion for new trial must be made. However, no mention was made of the line of cases holding that a motion for a continuance must be made in order to save the alleged error for review on appeal. See *People v Gibson,* 253 Mich 476; 235 NW 225 (1931), *People v Tiner,* 17 Mich App 18, 20–21; 168 NW2d 911 (1969), *People v McNary,* 43 Mich App 134, 137; 203 NW2d 919 (1972).

In *Robinson* the witness was not endorsed on the information and no due diligence hearing was held. Therefore, the question remains whether that decision overruled *Gibson* when a situation such as the one present here exists. Counsel in this case failed to ask for a continuance or make any similar request as permitted under circumstances set out in *People v Ivy, supra.* Nevertheless, we will consider the issue as presented.

It is well settled that the determination of due diligence rests within the sound discretion of the trial judge. This Court in *People v Riley Williams,* 57 Mich App 199, 202; 225 NW2d 691 (1974), even though the *Gibson* rule was still followed, adopted a definition from *State v Scott,* 110 La 369, 375; 34 So 479 (1903), which reads:

"Due diligence in law means doing everything reasonable, not everything possible."

In *People v Bell,* 74 Mich App 270, 274–275; 253 NW2d 726 (1977), this Court said:

"The question of whether due diligence has been shown is a matter for the discretion of the trial court

whose decision will be overturned on appeal only where a clear abuse of discretion is shown. *People v Rimson,* 63 Mich App 1; 233 NW2d 867 (1975). On the basis of the record we find no abuse of discretion."

Of course, additional efforts to locate the witness could have been made, but we hold on authority of the above cited decisions, when applied to the facts as hereinbefore delineated, that the trial court's ruling was correct.

Furthermore, it would appear that defendant suffered no injustice because of the inability to produce this witness since there were five other disinterested witnesses in addition to Sally Schippers, an unusually large number, who observed the crime.

## III

Was defendant denied a fair trial by the prosecution's injection of certain information into the record concerning the release of various individuals from the Center for Forensic Psychiatry after those individuals had been found not guilty by reason of insanity?

The defense called to the stand Dr. Dennis Coson, a psychiatrist employed at the Center for Forensic Psychiatry at Ypsilanti, in order to prove the state of defendant's mind at the time of the shooting. During cross-examination, in an attempt to discredit the witness, the prosecutor inquired about two citizens being prematurely released from the center who later committed serious crimes.

Clearly this testimony was irrelevant and the objection to the admission thereof should have been sustained.

Generally, the extent and control of cross-exami-

nation in a criminal prosecution is within the discretion of the trial court. *People v DeLano,* 318 Mich 557; 28 NW2d 909 (1947), *People v Flenon,* 42 Mich App 457, 467; 202 NW2d 471 (1972).

However, an error in the admission or exclusion of evidence will result in harmless error and will not require reversal unless it results in a manifest injustice. GCR 1963, 529.1, MCL 769.26; MSA 28.1096.

A two-pronged test to determine when reversible error has been committed was articulated in *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972):

" 'Where it is claimed that error is harmless, two inquiries are pertinent. First, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? * * * Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt?' "

The purpose of the first step in determining whether an error is harmless is "to deter prosecutorial misconduct and to safeguard those individual rights which are so fundamental that the impact of their violation cannot be fully assessed". *People v Christensen,* 64 Mich App 23, 33; 235 NW2d 50 (1975).

This was a long trial with many witnesses and a huge amount of testimony for the jury to consider. This error, when taken alone, could not have misled the jury and, therefore, would not be so fundamental as to result in a manifest injustice.

Although we do not condone the questions asked by the prosecutor, we find that the evidence was so overwhelming that reasonable jurors could find defendant guilty beyond a reasonable doubt and it is not reasonable to conclude that, absent the

errors now complained of, even one juror would find defendant not guilty.

## IV

Was defendant denied a fair trial by the court's ruling that his attorney could not have access to the letters written by him when they were first presented to refresh his memory?

During the cross-examination of defendant by the prosecutor, four letters allegedly written by the witness to Sally Schippers were brought to defendant's attention.

Following a colloquy between the attorneys and the court it was decided that the letters could be used for the purpose of refreshing defendant's memory, not for impeachment, and that counsel for defendant could not see them unless they were admitted into evidence.

When a witness testifies from memory, after being refreshed by a writing, his testimony is what is introduced into evidence and not the writing. *People v Thomas,* 359 Mich 251; 102 NW2d 475 (1960), *People v Turner,* 59 Mich App 589; 229 NW2d 861 (1975).

In the present case defense counsel was eventually allowed the right to examine the letters. After doing so, he stated that ordinarily he would have no objections to their admission into evidence, but he objected here because of notes made on the letters by the prosecutor.

Under the circumstances here present we hold that any error in initially denying defense counsel access to the letters was harmless under GCR 1963, 529.1, MCL 769.26; MSA 28.1096.

Furthermore, defendant was not prejudiced by the erroneous ruling since portions of the letters

read to the jury presented nothing in addition to that which was testified to by other witnesses.

V

Did the trial court commit reversible error by preventing a defense expert witness from testifying as to his opinion, which had been formed as a result of information obtained while defendant was under the influence of sodium brevital, a so-called "truth serum" drug?

Dr. Ames Robey, former head of the center at Ypsilanti, was called as another expert by defendant in order to show the state of mind of the latter at the time of the shooting. The witness testified that in his opinion there was no wilful intent on the part of defendant to take a life, but that there was an intent to protect himself. No objections were raised to this testimony, but objections were made when there was an effort to bolster this opinion by facts obtained while defendant was under the influence of sodium brevital. The trial court sustained the objection on the ground that the witness could not "disassociate" himself from what he learned during that period.

It is argued in defendant's brief that the "sodium brevital may or may not be admissible," but that the facts obtained thereby should not be excluded.

The authorities in other jurisdictions are divided on this issue and up to the present time, this was a matter of first impression in Michigan. However, another panel of this Court in *People v Cox,* 85 Mich App 314; 271 NW2d 216 (1978), has decided the issue in a way that supports the conclusion of the trial judge and is controlling.

After considering the parallel with the admissi-

bility of polygraph results and decisions in other states, the writer of that opinion stated:

"The large majority of states which have applied this type of standard to truth serum evidence has found it lacking in scientific recognition and accordingly excluded it from admission. See 3 Wharton's Criminal Evidence (13th ed), § 630, pp 249–253; Anno: *Admissibility of physiological or psychological truth and deception test or its results to support physician's testimony,* 41 ALR3d 1369.

"Applying this test to the case at bar, we find that the trial judge correctly ruled that the results of the brevital sodium test, and the witness's opinions relating to those results, were inadmissible. The psychiatrist himself admitted upon inquiry from the court that there was no medical evidence or studies on the reliability of this drug as a truth serum. Absent such evidence, the court was obligated to rule that the testimony was too uncertain to be allowed before a jury, where it would have had a potentially significant impact." 85 Mich App at 317–318. (Footnote omitted.)

The same reasoning which was applied in *People v Cox, supra,* applies here and, therefore, the trial judge did not err in excluding the testimony of Dr. Robey.

## VI

Was defendant denied due process of law and a fair trial when his attorney was denied access to reports regarding the deceased having a switchblade knife in his possession at the time of the shooting?

Counsel, prior to trial, filed a motion requesting the examination of the shotgun, clothing of the deceased, diagrams and reports. The court granted certain examinations, but denied access to any reports concerning a switchblade knife alleged to

have been in the possession of the deceased at the time of the incident.

There are some variations among different panels of this Court as to just how an issue of this type should be disposed of.

In *People v Nkomo,* 75 Mich App 71, 75; 254 NW2d 657 (1977), we find this statement:

"GCR 1963, 785.1(2) expressly excludes the application of discovery rules in criminal cases. A discovery motion in a criminal case, then, is addressed to the trial court's sound discretion."

A similar ruling can be found in *People v Ranes,* 58 Mich App 268, 274; 227 NW2d 312 (1975).

The tone for more liberal thinking was sounded in *People v Johnson,* 356 Mich 619, 621; 97 NW2d 739 (1959):

"The legal concept of a criminal trial has changed considerably in modern times. It is seen less as an arena where 2 lawyer gladiators duel with the accused's fate hanging on the outcome and more as an inquiry primarily directed toward the fair ascertainment of truth."

In *People v Walton,* 71 Mich App 478, 481–482; 247 NW2d 378 (1976), this Court said:

"Traditionally, information sought by a defendant is discoverable when, in the sound discretion of the trial court, the object sought is admissible into evidence and the suppression of it might result in a failure of justice. * * * But, discovery has not been limited exclusively to whether the information sought was admissible at trial. Rather, the focus has shifted to whether fundamental fairness to the defendant, in preparing his defense, requires that he have access to the requested information."

The last sentence, above quoted, appears to be the key by which the issue should be judged. From this standpoint it is difficult to understand why a report of this type should be suppressed particularly in view of the defense employed by defendant. Accordingly, we hold that the trial court abused its sound discretion in this matter.

However, we hasten to add that the error was harmless for the following reasons:

1. Defendant testified on direct examination that he saw something in the hand of the deceased, but did not know what it was.

2. Two police officers testified that a knife was taken from the right front pocket of the deceased while the latter was in the emergency ward of the hospital. Therefore, the fact that Doss had such a knife was before the jury to consider and accordingly defendant suffered no injustice as a result of the error.

As previously noted, defendant was charged with first-degree murder, but found guilty by the jury of voluntary manslaughter. That term is defined in 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1658, p 2002:

"Voluntary manslaughter is the killing of another intentionally, but in a sudden heat of passion, due to adequate provocation, but without malice."

Examination of the various elements gleaned from the record after the surplusage has been removed clearly shows that the jury was justified in reaching this verdict.

The facts in support thereof are that: defendant armed himself with a shotgun following a dispute over a girl friend. Any man who does that and then returns to face the enemy is asking for

trouble. Sally Schippers testified that when defendant came to the door of the gas station, he shouted: "Don't make a move or I'll kill you". After his car was rammed, he fired two shots through the back window of the car owned by the deceased. He reloaded the gun in order to have it ready for immediate action if necessary. And, there were three shells found at the site of the shooting.

The intention to kill was clear from defendant's own statement and from his actions, which speak for themselves. He was provoked by a man thought to be stealing his girl friend, which in itself would bring about the "sudden heat of passion".

Further, it should be observed that the motion for a new trial was heard almost two years after the conviction. Such a practice, which could have been planned, is looked upon with disfavor by the courts. *People v Johnson,* 386 Mich 305, 310; 192 NW2d 482 (1971).

As further support for this reasoning, we quote again from 2 Gillespie, Michigan Criminal Law & Procedure (1978 rev ed), § 726, p 395:

"In such cases, if a new trial is granted, the prosecution is handicapped in presenting a new case for the people, and defendant often goes free because the long lapse of time has made it impossible to procure the attendance of witnesses against him."

A similar statement, recently published, says:

"The granting of a motion for new trial is discretionary with the trial court, and is not granted unless it is affirmatively shown that the error complained of has resulted in a miscarriage of justice. The Michigan Court Rules list grounds for which a new trial may be

granted. The combination of relevant statutes and rules has resulted in the court's careful scrutiny of demands for new trial." (Footnotes omitted.) Note: *People v Barbara: The Admissibility of Polygraph Test Results in Support of a Motion for New Trial,* 1978 Det Coll L Rev 347, 350.

All trial judges are fully cognizant of the fact that it is virtually impossible to conduct litigation of this type, especially with the dramatic overtones present here, without some errors creeping into the proceedings. After all, a person charged with a crime is entitled to a fair trial—not a perfect one. *People v Williams,* 11 Mich App 62, 66; 160 NW2d 599, 601 (1968).

Defendant was represented by competent counsel during the long and tedious trial. On appeal, his attorney has presented in his behalf an excellent brief in which the errors, heretofore considered, were set forth in detail.

Following a careful review of the record, the issues raised, and the entire proceedings, we find no justificable reasons why a new trial should be granted at this late date.

Affirmed.