PEOPLE v BAILEY

Docket No. 44812. Submitted April 2, 1980, at Lansing.—Decided October 24, 1980.

Robert E. Bailey was convicted of delivery of heroin in Macomb Circuit Court, Robert J. Chrzanowski, J. After a police informant and an undercover police officer went to the defendant's home, the defendant sold to the officer five $15 packets containing heroin, such sale being observed by the informant. Later the same day, the officer contacted the defendant in an attempt to establish a "clean buy" of additional heroin. Thereupon, the defendant sold to the officer two packets of heroin. The second purchase formed the basis for the charge against the defendant. The defendant appeals alleging that he was denied his right to a speedy trial, that he was deprived of a fair trial because testimony was admitted detailing the officer's first heroin purchase from the defendant, which did not form the basis for any criminal charges, and the defendant's prior use of drugs, that reversible error occurred due to the prosecution's failure to disclose prior to trial that the officer was equipped with a wireless microphone, and that he was denied effective assistance of counsel. *Held:*

1. Balancing the factors used to determine whether a defendant was denied the right to a speedy trial, length of delay, the reason for the delay, the defendant's assertion of his right and prejudice to the defendant, the defendant was not denied his right to a speedy trial.

2. Error was committed by the trial court's admission of evidence substantiating the defendant's prior bad acts, but here the error was not intrinsically offensive to the maintenance of

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 241 *et seq.*

[3] 29 Am Jur 2d, Evidence § 320.

[4] 29 Am Jur 2d, Evidence § 321.

[5] 5 Am Jur 2d, Appeal and Error § 803.

[6] 21 Am Jur 2d, Criminal Law § 331.

23 Am Jur 2d, Depositions and Discovery § 307 *et seq.*

[7, 8] 21 Am Jur 2d, Criminal Law § 315.

a sound judicial system, and the error was harmless beyond a reasonable doubt.

3. Traditionally, information sought by a criminal defendant may be obtained by discovery where, in the sound discretion of the trial court, the object sought is admissible into evidence and the suppression of it might result in a failure of justice. However, discovery has not been limited exclusively to whether the information sought was admissible at trial but rather, whether fundamental fairness to the defendant in preparing his defense requires that he have access to the requested information. Here, the defendant was not denied fundamental fairness òr impaired in preparing his defense as a result of the prosecution's actions.

4. Defense counsel's performance does not suggest unpreparedness, lack of skill or a failure to protect defendant's interests. In all respects, the defendant was provided with adequate representation.

Affirmed.

1. CRIMINAL LAW — SPEEDY TRIAL — BALANCING TEST.

A balancing test is used to determine whether a criminal defendant has been prejudiced where he claims a denial of his right to a speedy trial utilizing the following factors: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.

2. WITNESSES — CRIMINAL LAW — IMPAIRED MEMORY — SPEEDY TRIAL.

Memory of witnesses clouded by delay in bringing a defendant to trial does not constitute evidence of deprivation of a right to a speedy trial where the evidence of unclear witness recall relates only to insignificant factors and matters not prejudicial to the defendant's case.

3. CRIMINAL LAW — EVIDENCE — PRIOR BAD ACTS — ADMISSIBILITY.

Evidence of a defendant's prior bad acts or crimes is generally not admissible because the probative value of such evidence is outweighed by its prejudicial effect.

4. CRIMINAL LAW — EVIDENCE — PRIOR SIMILAR ACTS.

The criteria for admission of evidence of prior similar acts of a defendant in a criminal case are (1) that there be substantial evidence of the defendant's commission of the previous offense, (2) that there be some special circumstances of the previous act probative of the elements of the present charge, and (3) that

the defendant's motive, intent, absence of mistake or accident, scheme, plan or system be material to the defendant's guilt of the present offense; evidence of similar acts is not admissible if the matter for which evidence is offered is not made an issue by the defendant.

5. EVIDENCE — TRIAL COURT ERROR — APPELLATE REVIEW.

Once error is found in the trial court's admission of evidence, the Court of Appeals must determine if the error was merely harmless, which requires a dual inquiry: (1) was the error so offensive to the maintenance of a sound judicial system as to require reversal; and (2) if not, was the error harmless beyond a reasonable doubt.

6. CRIMINAL LAW — DEFENDANT'S DISCOVERY.

Traditionally, information sought by a criminal defendant may be obtained by discovery where, in the sound discretion of the trial court, the object sought is admissible into evidence and the suppression of it might result in a failure of justice; but discovery has not been limited exclusively to whether the information sought was admissible at trial but rather whether fundamental fairness to the defendant, in preparing his defense, requires that he have access to the requested information.

7. CRIMINAL LAW — DEFENSE COUNSEL — EFFECTIVE ASSISTANCE.

The test for determining effective assistance of defense counsel is that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations.

8. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL — APPELLATE REVIEW.

A criminal defendant's claim of error based on ineffective assistance of counsel will fail, even if actual proof of prejudice is presented, unless but for the alleged errors of counsel the defendant would have had a reasonably likely chance of acquittal. .

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Don L. Milbourn,* Chief Appellate Lawyer, and *Robert J. Berlin,* Assistant Prosecuting Attorney, for the people.

*Richard A. Chikota,* for defendant on appeal.

Before: BASHARA, P.J., and M. J. KELLY and D. R. FREEMAN,* JJ.

PER CURIAM. Defendant, Robert Earl Bailey, appeals from his conviction and sentence for delivery of heroin, contrary to MCL 335.341(1)(a); MSA 18.1070(41)(1)(a).[1] On March 13, 1979, defendant was sentenced to from 4 to 20 years imprisonment. He appeals as of right and raises six grounds for reversal.

This appeal arises out of a purchase of heroin from the defendant by undercover Michigan State Police Trooper Juan Guillen. On September 7, 1976, Guillen and a second officer met with an informant, Ellen Schultz, who said she would contact the police when she had relevant information on the defendant. Schultz did not inform the officers of her whereabouts or of a means to contact her.

On September 27, 1976, Schultz informed Guillen that the defendant had heroin for sale. Guillen then accompanied Schultz to the defendant's home. The defendant left his home and entered Guillen's car where, with Schultz present, a sale of five $15 packets containing heroin was concluded. The facts of this purchase did not form the basis for the instant conviction and were not made known during the prosecution's case in chief.

Later the same day, Guillen contacted the defendant in an attempt to establish a "clean buy" of additional heroin. At about 10:30 p.m., Guillen again met the defendant in the officer's car. The

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Since repealed by 1978 PA 368, § 7101 *et seq.* The present controlled substances act is found in MCL 333.7101 *et seq.;* MSA 14.15(7101) *et seq.*

two men discussed the matter of price of the heroin and a possible future purchase of heroin. Defendant then gave Guillen two packets of a powdery substance. later identified as heroin, for which Guillen paid $30. This purchase formed the basis for the instant charge against the defendant.

At the close of defendant's proofs, a hearing was conducted to determine whether Ellen Schultz was a res gestae witness and whether due diligence was used by the police to produce her for testimony. The trial court concluded that the initial September 27 purchase which Schultz witnessed was an offense separate from that for which the defendant was charged, thus not making Schultz a res gestae witness. At the close of the hearing, the defendant informed the court of a means to contact Schultz. She was produced in court the next day but was not called by the defendant. As a rebuttal witness for the prosecution, Schultz testified to the defendant's use of heroin and his business of selling drugs.

The defendant's first issue alleges a denial of the constitutional right to a speedy trial, US Const, Am VI; Const 1963, art 1, § 20. The defendant's trial began on January 24, 1979, approximately two years after authorization of a warrant for his arrest.

In *Barker v Wingo,* 407 US 514, 530; 92 S Ct 2182, 2192; 33 L Ed 2d 101, 116-117 (1972), the United States Supreme Court outlined a four-step balancing test to determine the presence of prejudice under a claim of denial of the right to a speedy trial. The test, adopted by our Supreme Court in *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), and *People v Collins,* 388 Mich 680; 202 NW2d 769 (1972), provides:

"A balancing test necessarily compels courts to ap-

proach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

Application of the above criteria leaves the defendant's claim without merit. A rebuttable presumption of prejudice was created by the approximate 24-month delay between arrest and trial. *People v Collins, supra; People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948). However, the remaining three factors in the Supreme Court's balancing test weigh heavily against the defendant's claim. Review of the trial record discloses that approximately 12 months of the delay was due to the defendant's request for time to retain private counsel, the unavailability of defense counsel and defense counsel's unpreparedness for trial. Thus, only 12 months of delay may be attributed to the prosecution, a period within the 18-month presumption of prejudice. In *People v Collins, supra,* 692, the Supreme Court addressed a similar situation:

"To recapitulate on balance the reasons for the delays in this case run against the defendant at least as strongly as against the prosecution. The defendant's posture certainly was not that of a man seeking speedy trial. As Justice Brennan said in concurring in *Dickey v Florida,* 398 US 48; 90 S Ct 1574; 26 L Ed 2d 38 (1969), '[a] defendant may be disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility.'"

Defendant made no assertion of his right to a

speedy trial until the date his trial actually began. In *People v Bennett,* 84 Mich App 408; 269 NW2d 618 (1978), this Court found the adverse effect of a failure to demand speedy trial diluted, where the prosecution remained responsible for 20 months of a 32-month delay. In this case, however, the prosecution's delay is not as substantial and does not itself push the defendant beyond the 18-month limit. In *Barker v Wingo, supra,* 531, the Supreme Court assigned "strong evidentiary weight" to the defendant's failure to assert his constitutional right. Absent assertion of his right to a speedy trial, the defendant's claim is heavily offset by this factor.

The final factor, prejudice to the defendant, was described in *People v Chism,* 390 Mich 104, 114; 211 NW2d 193 (1973):

"There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to his defense. Prejudice to his person would take the form of oppressive pretrial incarceration leading to anxiety and concern. Prejudice to his defense might include key witnesses being unavailable. Impairment of defense is the most serious, 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' *Barker,* 407 US 514, 532."

Defendant argues that the delay clouded the memory of several witnesses. However, the testimony cited as evidence of unclear witness recall relates only to such insignificant factors as the model of Officer Guillen's car and matters not prejudicial to the defendant's case. Therefore, we find that the defendant was not deprived of his right to a speedy trial.

Defendant also contests as violative of his right to a fair trial the admission of testimony detailing

the first heroin purchase on September 27 and the defendant's prior use of drugs. Evidence of a defendant's prior bad acts or crimes is generally not admissible because the probative value of such evidence is outweighed by its prejudicial effect. *People v Bates,* 91 Mich App 506, 510; 283 NW2d 785 (1979). An exception to the general rule of inadmissibility is found in MCL 768.27; MSA 28.1050:

> "In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

See also MRE 404(b).

In *People v Wilkins,* 82 Mich App 260, 267-268; 266 NW2d 781 (1978), the Court defined three criteria for admission of evidence of prior similar acts: (1) that there be substantial evidence of the defendant's commission of the previous offense; (2) that there be some special circumstances of the previous act probative of the elements of the present charge; and (3) that the defendant's motive, intent, absence of mistake or accident, scheme, plan or system be material to the defendant's guilt of the present offense. Additionally, evidence of similar acts is not admissible if the matter for which evidence is offered is not made an issue by the defendant. *People v Duncan,* 402 Mich 1; 260 NW2d 58 (1977).

At trial, evidence of the prior heroin purchase was not probative of the defendant's motive, intent, absence of mistake, scheme, plan or system. Additionally, the first sale is not inextricably blended with the facts of the charged offense, to make admissible the disputed testimony. *People v Delgado,* 404 Mich 76; 273 NW2d 395 (1978). Thus, error was committed by the trial court's admission of evidence substantiating the defendant's prior bad acts.

Once error is found in the trial court's admission of evidence, we must determine if the error was merely harmless. The harmless error standard involves a dual inquiry: (1) was the error so offensive to the maintenance of a sound judicial system as to require reversal; and (2) if not, was the error harmless beyond a reasonable doubt. *People v Wilkins, supra.* We conclude that in light of the substantial evidence implicating the defendant in the instant offense, the error was not intrinsically offensive to the maintenance of a sound judicial system. *People v Adan,* 83 Mich App 326; 268 NW2d 397 (1978). Additionally, the error was harmless beyond a reasonable doubt. Had the trial been free of such error, it is not reasonably possible that any juror would have voted to acquit the defendant. *People v Christensen,* 64 Mich App 23; 235 NW2d 50 (1975).

Defendant also alleges as reversible error the prosecution's failure to disclose prior to trial the fact that Officer Guillen was equipped with a wireless microphone. Without such evidence, the defendant argues that he was unable to prepare an adequate defense to the charges against him.

In *People v Walton,* 71 Mich App 478, 481-482; 247 NW2d 378 (1976), this Court discussed the scope of discovery in criminal proceedings:

"Traditionally, information sought by a defendant is discoverable when, in the sound discretion of the trial court, the object sought is admissible into evidence and the suppression of it might result in a failure of justice. * * * But, discovery has not been limited exclusively to whether the information sought was admissible at trial. Rather, the focus has shifted to whether fundamental fairness to the defendant, in preparing his defense, requires that he have access to the requested information."

See also *People v Fournier,* 86 Mich App 768, 784; 273 NW2d 555 (1978). In the present case, the disputed evidence was not beneficial to defendant. Also, upon discovery of the evidence during trial the lower court permitted defendant to reopen his proofs to impeach the undercover officer. Unlike the situation in *People v Walton, supra,* defense counsel herein was provided a full opportunity to make use of the newly discovered information. Therefore, we find that the defendant was not denied fundamental fairness or impaired in preparing his defense as a result of the prosecution's actions.

Defendant contends that the actions of his defense attorney deprived him of his right to the effective assistance of counsel. Specifically, the defendant states that defense counsel failed to object to evidence of the defendant's bad acts, failed to request an instruction limiting the jury's consideration of such evidence, brought into consideration possible prior crimes committed by the defendant and read a report indicating the defendant committed perjury in a previous Federal drug trial.

In *People v Garcia,* 398 Mich 250, 264-266; 247 NW2d 547 (1976), the Supreme Court adopted the test for determining effective assistance of defense counsel espoused in *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974):

"Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations."

Additionally, even if actual proof of prejudice is presented, the defendant's claim of error will fail "unless, but for these alleged errors, defendant would have had a reasonably likely chance of acquittal". *People v Krist,* 93 Mich App 425, 435; 287 NW2d 251 (1979). In this case, the evidence introduced to show defendant's guilt was substantial. Also, review of the record and transcript discloses a clear defense counsel strategy to focus the jury's attention on allegedly improper investigation motives and actions by the police. Finally, defense counsel endeavored to protect the defendant by the use of lengthy cross-examination of prosecution witnesses. In light of the *Beasley* standards, defense counsel's performance does not suggest unpreparedness, lack of skill or a failure to protect defendant's interests. In all respects, the defendant was provided with adequate representation.

We have examined the defendant's remaining two issues and find them without merit.

Affirmed.