(608 P.2d 1014)
No. 51,095

STATE OF KANSAS, *Appellee,* v. TOMMIE L. ROBINSON, *Appellant.*

Opinion filed March 7, 1980.

*Lee Thompson,* of Martin, Pringle, Fair, Davis & Oliver, of Wichita, for appellant.

*Beverly Dempsey* and *James D. Turner,* assistant district attorneys, *Vern Miller,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before REES, P.J., SPENCER and MEYER, JJ.

MEYER, J.: Tommie L. Robinson (appellant) was convicted by a jury of the crimes of theft (K.S.A. 21-3701[a]), and burglary (K.S.A. 21-3715).

On the morning of January 7, 1979, a burglar alarm was

activated at Action Auto Radio, Inc., in Wichita. An investigating officer learned that two auto radios had been taken. He observed distinct footprints in the snow outside the store and followed them to an opening under a nearby house where he discovered the stolen property. Surveillance was set up at the location and appellant was observed kneeling by the opening. Appellant started walking away carrying a sack. When police called out to him, he dropped the sack and ran. He continued to run even after a warning shot was fired but was soon apprehended. Appellant testified at trial that he had been in the area earlier and had seen someone running with the goods; that he had followed that person's footprints to the opening under the house, had placed the goods in a sack which he found under the house, and then left with the goods. He denied taking the goods from Action Auto Radio, Inc.

The shoeprints which the officer first followed after discovering the break-in were not those of tennis shoes, while appellant was wearing tennis shoes at the time of his apprehension. Testimony was that the burglar alarm had gone off prior to 10:00 a.m., and appellant was observed leaving the house with the goods at about 11:38 a.m.

A statement of appellant's, made to the officers after his arrest, was admitted into evidence in rebuttal of his testimony over appellant's objection. Appellant was found guilty of both charges. His motion for a new trial based on newly discovered evidence of alibi was denied.

Appellant first complains that the trial court erred in failing to instruct the jury as to misdemeanor theft (K.S.A. 21-3701).

While misdemeanor theft is clearly a lesser included offense of felony theft (*State v. Green,* 213 Kan. 547, 516 P.2d 926 [1973]), it is not necessary to give the instruction where the value of the stolen goods is established at over $100.00, and where there is no evidence of a value of less than $100.00. *State v. Nesmith,* 220 Kan. 146, 152, 551 P.2d 896 (1976). The stolen radios had a malfunction, and the owner of Action Auto Radio, Inc., testified that for that reason he did not intend to sell them. He stated the radios cost him $59.95 each, and that each had a normal retail price of $119.00. He testified that he could get $59.95 for each of them by sending them back to the wholesaler.

Appellant contends the fact the owner did not intend to sell

them, and that they were defective, is sufficient evidence of a value of less than $100.00 to require an instruction on misdemeanor theft.

Appellant's claim in this regard lacks merit for two reasons. First, the store owner testified that he could have sold the radios for "in the neighborhood of $75.00" in their "as is" condition, and while the owner did not specifically say that he could get that for each of them, it is very clear by the context in which his testimony was given that that is what he meant. Second, the rule that fair market value is the value to be used in determining whether a theft is a felony or a misdemeanor does not exclude other methods of determining value. And where the stolen goods have a unique or peculiar value to the owner, then evidence of such value is fully competent in the absence of proof of fair market value.

In *State v. Inverarity,* 150 Kan. 160, 92 P.2d 45 (1939), the defendant claimed there was no competent evidence establishing the value of the stolen articles. The following appears in *Inverarity,* at pages 160-161:

"The property taken consisted of farming implements. The owner was a witness and testified, naming the articles taken, stating their condition for use, and that they were usable as farming tools and equipment. He testified as to the value of each article, in some cases basing his opinion on what similar articles had sold for at public sales. Appellant contends that market value was not proved, and that the owner's testimony as to value was incompetent. He cites no authority in support of his contention. In *Lawson v. Southern Fire Ins. Co.,* 137 Kan. 591, 599, 21 P.2d 387, this court recognized the rule that an owner is presumed to know the value of his property and may therefore give testimony with respect thereto."

The *Inverarity* case was cited with approval in *State v. Ireton,* 193 Kan. 206, 392 P.2d 883 (1964).

Other jurisdictions have dealt specifically with the valuation problem.

"In the absence of a market value, evidence of the actual value, or the replacement value, or the saleable value at a secondhand dealer, or its value to the owner, or the sale price for junk, of the property stolen has been held admissible. However, it is well settled that evidence of any other valuation but the market value of stolen property has been held inadmissible unless it is first shown that there is no market value." *State v. Clark,* 13 Wash. App. 782, 788, 537 P.2d 820 (1975), citing from 52A C.J.S., Larceny § 118, p. 619.

"It is true, as appellant contends, that the fair market value of personal property is the test to be applied in order to determine whether the theft of such property constitutes grand theft or petty theft (Pen. Code, § 484; *People v. Lathrop,* 37 Cal.

App. 2d 341 [99 P.2d 330]; *People v. Lenahan,* 38 Cal. App. 2d 39 [100 P.2d 515]; *People v. Cook,* 233 Cal. App. 2d 435 [43 Cal. Rptr. 646]). However, this rule is by necessity subject to the qualification that under circumstances where, for example, the property has a unique or restricted use and an extremely limited market, the actual or replacement cost to the one from whom it was stolen is its fair market value. Otherwise, valuable property rights in certain kinds of property vitally needed in industry would be seriously jeopardized by the mere fact that once stolen the only remaining use for such property, and hence the only market therefor, is as 'salvage.' Accordingly, we agree with respondent's assertion that under these circumstances the term 'market value' is synonymous with the term 'replacement value.' " *People v. Renfro,* 250 Cal. App. 2d 921, 924, 58 Cal. Rptr. 832 (1967).

We hold the rule as to value to be used in determining whether a theft is a felony or a misdemeanor is that same is the fair market value, except where an item or items constituting the res of the theft has no fair market value, or where the value is peculiar to the owner from whom the property was stolen, then its "money" value to the owner is a proper test. We stress "money" value in order to make it clear that mere sentimental considerations cannot be attributed value when that term is used in the field of criminal law.

In the instant case the owner from whom the property was stolen could have received over $100.00 in value for the stolen items, and no other witness testified as to value. Furthermore the owner never testified to a value of less than $100.00. It was, therefore, proper for the trial court to refuse to give an instruction on misdemeanor theft. See also *State v. Jordan,* 62 Kan. 868, 63 Pac. 1126 (1901).

In this regard it is also claimed by appellant that a specific question should have been directed to the jury (as per PIK Civ. 2d 9.20) as to the value of the stolen goods. While that instruction might have been necessary under other circumstances, under all of the evidence in this case the same was not necessary. The issue instruction as to theft had as one of its requirements that the jury had to find the value of the stolen goods was "more than $100.00" in order to find appellant guilty. We conclude it was not prejudicial error for the trial court to decline to give a value instruction as per PIK Civ. 2d 9.20.

Appellant next complains that the trial judge should have given an instruction defining "unlawful deprivation" as a lesser included offense.

There is no merit to this contention. Here there was no evi-

dence that appellant took the property with the intent of depriving the owner *temporarily.* Appellant denies taking the property from the owner. He denies any criminal intent whatever. Appellant testified at trial that he intended to return the goods to the owner. He admitted taking them from under the house. If his intent when he removed the goods from under the house was to take them to their owner, then he was not guilty of any crime at all. "Intent may be established by circumstantial evidence." *State v. Goodman,* 3 Kan. App. 2d 619, 627, 599 P.2d 327 (1979).

Appellant next complains that the court erroneously admitted his prior statement, given in response to custodial interrogation, solely on the ground it was not a voluntary statement.

The statement was offered after appellant had testified. A *Jackson v. Denno* hearing was held in which it was determined that the statement was voluntarily made. That determination by the trial court will be accepted on appellate review if supported by substantial competent evidence. See *State v. Thompson,* 221 Kan. 165, Syl. ¶ 2, 558 P.2d 1079 (1976).

In *State v. Roberts,* 223 Kan. 49, Syl. ¶ 5, 574 P.2d 164 (1977), it is said:

"When a confession or statement by a defendant has been found involuntary it is unreliable and untrustworthy and it does not then satisfy the legal standards necessary for admissible evidence. It must then be excluded whether offered in the state's case in chief or for impeachment purposes."

Also, in *State v. Thompson,* it was claimed that the low intelligence of the defendant precluded his statement from being voluntary. The court stated:

"The mental deficiencies of the defendant may be an important factor in determining whether or not a confession was voluntarily given. That fact alone, however, is not conclusive evidence on the issue." 221 Kan. at 170.

Here, the appellant claims he had little education, he was handcuffed while being questioned, and was in the interrogation room for some period of time before being questioned. He further claims that he did not understand what the detectives were talking about, and that he was confused about his *Miranda* rights. It is not contradicted that the evidence showed there were no threats or promises, and that there was no odor of alcohol or anything unusual about appellant's eyes—he exhibited no erratic behavior. There was substantial evidence to support the trial court's finding that the statement of the appellant was voluntary.

The appellant does not now contend the *Miranda* warning was not properly given nor that there was not sufficient evidence to find an effective waiver of his *Miranda* rights. However, we construe the record to disclose these questions were not decided by the trial judge; his attention was directed by counsel solely to voluntariness. Assuming no proper and effective waiver of appellant's *Miranda* rights, still the statement was admissible for the purpose of impeachment of the credibility of appellant.

In *Harris v. New York*, 401 U.S. 222, 225-6, 28 L.Ed.2d 1, 91 S.Ct. 643 (1971), the court stated:

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. [Citations omitted.] Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements."

See also *Oregon v. Hass,* 420 U.S. 714, 43 L.Ed.2d 570, 95 S.Ct. 1215 (1975).

The test, where a statement is offered for impeachment purposes, is not whether it meets *Miranda* requirements, but rather whether "the trustworthiness of the evidence satisfies legal standards." *Harris v. New York,* 401 U.S. at 224.

While the trial judge conducted a *Jackson v. Denno* hearing, and concluded that the statement was voluntarily made, he expressed no other finding but simply held the statement "would be admitted on cross." We conclude that under these circumstances, the statement was admissible to impeach appellant's credibility.

Appellant claims there was insufficient evidence to support a guilty verdict as to the burglary charge. This claim also lacks merit. The standard of review in a criminal case is whether the evidence when viewed in the light most favorable to the prosecution convinces the appellate court that a rational factfinder could have found defendant guilty beyond a reasonable doubt. See *State v. Voiles,* 226 Kan. 469, 601 P.2d 1121 (1979); *State v. Henderson,* 226 Kan. 726, 603 P.2d 613 (1979); *State v. McGhee,* 226 Kan. 698, 602 P.2d 1339 (1979).

Here, the evidence showed appellant in possession of the stolen goods, that he had them at the "stash" location, that the tracks of the thief and of appellant were of the same size (although of a different type of shoe), that appellant ran when called out to by the officers and continued to run after a warning shot. Appellant also claimed that he found the sack in which he transported the stolen items under the house.

In *State v. McFall,* 219 Kan. 798, 799, 549 P.2d 559 (1976), the court said:

"Possession by an accused of recently stolen property is sufficient to sustain convictions for burglary and theft where a satisfactory explanation is not given."

While appellant's statement as to how he found the stolen goods has some plausibility, it is apparent the jury did not believe him. More importantly, however, his conviction does not depend on possession alone, but on the entirety of the circumstances, the most important of which have been set out above.

Appellant's claim that the trial court abused its discretion in not granting a new trial based on newly discovered evidence likewise lacks merit. The supreme court, in discussing the rules of K.S.A. 22-3501 as to the granting of a new trial for newly discovered evidence, states:

"The granting of a new trial for newly discovered evidence is in the trial court's discretion. [Citation omitted.] A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon re-trial. [Citation omitted.] The credibility of the evidence offered in support of the motion is for the trial court's consideration. [Citations omitted.] The burden of proof is on defendant to show the alleged newly discovered evidence could not with reasonable diligence have been produced at trial. [Citations omitted.] The appellate review of an order denying a new trial is limited to whether the trial court abused its discretion." *State v. Johnson,* 222 Kan. 465, 471, 565 P.2d 993 (1977).

Appellant's newly discovered evidence consisted of a "witness" who claimed he saw appellant some Sundays. He could not recall whether or not he had seen appellant on the Sunday of the burglary. Assuming, arguendo, that appellant met the requirement of the evidence being actually "newly discovered" and that he could not have discovered this witness ahead of trial, and assuming further that everything the witness said was true, such evidence would fall far short of constituting an alibi for appellant. It cannot be said that such testimony would likely have

produced a different result at the trial. The trial court did not abuse its discretion in refusing to grant a new trial.

Affirmed.