290 S.E.2d 260

**STATE of West Virginia**

v.

**Roundtree Riley GOODMON.**

**No. 14989.**

Supreme Court of Appeals of West Virginia.

Dec. 18, 1981.

James E. Spurlock, Huntington, for appellant.

Chauncey H. Browning, Jr., Atty. Gen., Marianne K. Hoover, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

The case is before this Court on an appeal from an order of the Circuit Court of Lincoln County, entered on May 22, 1979, sentencing the defendant, Roundtree Riley Goodman, to life without mercy in the West Virginia State Penitentiary at Moundsville. That order also denied the defendant's motion to set aside the verdict and award him a new trial. The defendant was convicted of the crime of first degree murder of Anna Lee White. Mrs. White was murdered in the kitchen of her home in Leet, West Virginia, on January 11, 1979. She was stabbed ten times in the head, neck, chest and back. She was also shot once in the head with a .22 caliber pistol.

On this appeal the defendant assigns and argues four errors: (1) the trial judge's denial of a motion for a change of venue; (2) the trial judge's denial of a motion to suppress one confession and the trial judge's admission of two other confessions for purposes of impeachment; (3) the trial judge's denial of a motion to suppress the knife allegedly used in the slaying; and (4) counsel appointed at trial did not render effective assistance.[1]

I

### CHANGE OF VENUE

The defendant argues that the trial judge erred in denying his motion for a change of venue. In support of that argument the defendant points to two similarities between his case and *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464 (1978)—widespread pre-trial publicity and the sexual nature of the crime. In *Sette*, the defendant was accused of having his mistress murder his wife. In the case before us the defendant was accused of murdering his girlfriend's sister after she rejected his sexual advances. The defendant, however, ignores a crucial distinction between his case and *State v. Sette, supra*. In *Sette* nearly fifty percent of the persons summoned for jury duty had formed a conclusion about the case. In the case presently before us only one juror expressed doubt about her ability to fairly decide the case on the evidence presented at trial. She was immediately excused.

■ Widespread pre-trial publicity is not enough, by itself, to justify a change of venue. *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966). "A change of venue will be granted in West Virginia when it is shown that there is 'a present hostile sentiment against an accused, extending throughout the entire county in which he is brought to trial....' Syl. pt. 1, *State v. Siers*, 103 W.Va. 30, 136 S.E. 503 (1927)." Syl. pt. 1, *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981). The burden is on the defendant to show that there is such prejudice against him that he cannot receive a fair trial in the county where venue originally lies. *State v. Wilson*, 157 W.Va. 566, 202 S.E.2d 828 (1974); *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966). The defendant in the case before us did not meet that burden. The trial judge, therefore, did not abuse his discretion when he denied the defendant's motion for a change

---

1. The defendant, in his petition for appeal, assigned 26 errors. The defendant, however, only briefed and argued four of those errors. The 22 errors neither briefed nor argued are, therefore, considered abandoned. *See* Syl. pt. 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981). The defendant's trial counsel was replaced by other counsel on this appeal.

of venue. *See State v. Dandy*, 151 W.Va. 547, 153 S.E.2d 507 (1967).

## II

### THE CONFESSIONS

The police first talked to Roundtree Riley Goodmon on January 17, 1979. At that time the defendant volunteered to take a polygraph test and to answer further questions. Troopers B. R. Lester and D. M. Ratliff went to the defendant's home at 6:30 p. m. on the evening of January 19, 1979. The defendant voluntarily accompanied the troopers to the State Police barracks in Hamlin. Upon their arrival at the barracks, the troopers left the defendant alone in one of the offices while they questioned another witness. At 9:00 p. m. Trooper Lester came out of the office where he was questioning the other witness and advised the defendant of his rights. He read from the Miranda form to the defendant and then gave him the form to read himself. The defendant told Trooper Lester that he understood his rights and signed a waiver form.

Troopers Lester and Ratliff started questioning the defendant at midnight. Sometime between 2:00 a. m. and 3:00 a. m. on the morning of January 20, 1979, the defendant asked to be allowed to talk to his girlfriend. The troopers complied with the request and placed a long distance telephone call. In the course of that telephone call the defendant confessed to his girlfriend, in the presence of the troopers, that he had killed her sister, Anna Lee White.

At approximately 3:10 a. m. the troopers began to take a written confession from the defendant. Very shortly after they began the written statement the defendant asked to be taken to see his girlfriend. The troopers acceded to his request and left the Hamlin barracks at 3:35 a. m. They proceeded to the home the defendant shared with his girlfriend in Chapmanville. Once they arrived at the home the defendant pointed out the spot where he had buried the knife with which he had stabbed Anna Lee White. The troopers recovered the knife. In the presence of the troopers, the defendant was then allowed to talk to his girlfriend in the back of the trooper's cruiser. He again confessed to the murder.

On their way back to Hamlin the defendant asked the troopers to stop at a bridge in Danville. The defendant said he had thrown the gun with which he shot Anna Lee White into the river from the bridge. Upon their arrival back in Hamlin the troopers finished transcribing the defendant's statement. The defendant signed the statement at 8:05 a. m. At 9:00 a. m. the defendant was arraigned before a magistrate. He requested, at that time, that a lawyer be appointed for him. After the arraignment the defendant was taken to the Cabell County jail.

On January 21, 1979, Troopers Lester and Ratliff questioned the defendant at the Cabell County jail. He again signed a waiver form and the troopers took a second written statement which the defendant signed. They also taped their interview with him.

The trial judge held a hearing on the defendant's motion to suppress the confessions on March 14, 1979. The trial judge, at that time, reserved ruling on the question. On May 7, 1979, the first day of the defendant's trial, the trial judge ruled that the two written statements and the tape recorded statement had been made knowingly, intelligently and voluntarily. He ruled that the two written statements were admissible. He reserved ruling on the admissibility of the tape recorded statement.

On May 10, 1979, the trial judge heard argument of counsel on whether the tape recorded statement was admissible. At the close of the argument he held the tape recorded statement to be admissible.

On the following day, May 11, 1979, the trial judge, the defense attorney, and the prosecutor discovered for the first time that the defendant, when he was arraigned on January 20, 1979, had requested that a lawyer be appointed for him. Upon making that discovery, the prosecutor stated that he no longer intended to introduce the second written statement and the tape recorded statement into evidence. Because

there had been testimony about the fact that these statements had been made, the defense requested an instruction to the jury explaining why the second written confession and the tape recorded statement were not being introduced into evidence.[2] The trial judge indicated that he would give such an instruction. The first written confession was admitted into evidence during the State's case in chief.

The defendant testified on his own behalf on May 14, 1979. On direct examination he was asked about the second written confession and the tape recorded statement. He testified that the statements were made under duress.[3]

On redirect examination of the defendant, the following exchange occurred:

Q. I asked you today, earlier this morning, where you were on January 11?

A. Right.

Q. And you answered me, is that true?

A. That's true.

Q. On the 17th, when the police asked you, did you answer?

A. The same way I did this morning.

Q. And the only time that you have ever answered differently was when you were questioned that night at the police station by Ratliff and Lester?

2. Specifically, earlier in the trial reference to the defendant's second written statement and the tape recorded statement had been made during the testimony of Troopers Ratliff and Lester.

3. The testimony appears in the record as follows:

Q. Did the police try to take any more statements from you after you had already asked for a lawyer?

A. Yes, sir, they did.

Q. Did they make your lawyer present with you?

A. No, sir, they did not.

Prosecutor: Your Honor, the State may make an objection here, because the Court's already made a ruling in this regard about the statement.

The Court: The Court made no ruling. If defense counsel wants to bring it out, that's defense's privilege.

Q. Did you, did the police question you at the Cabell County Jail?

A. Yes, sir, they did.

Q. After you had already made a request in writing for a lawyer?

A. That's true.

The defense rested after the defendant's testimony. In chambers the prosecutor moved to have the second written statement and the tape recorded statement admitted as rebuttal evidence on the issue of the voluntariness of the defendant's statements. The trial judge heard argument on the motion at that time but reserved a ruling so as to give counsel time to do further research. The following day, May 15, 1979, the trial judge heard further argument on the question and, at the close of argument, ruled that the second written confession and the tape recorded statement would be admitted for the limited purpose of impeachment of the defendant's testimony regarding the voluntariness of the statements.

On this appeal the defendant assigns as error the admission of the first written confession as part of the State's case in chief, and the admission of the second written confession and the tape recorded statement as impeachment evidence. The defendant argues that the statements were involuntary and were, therefore, inadmissible. We find no merit in the defendant's argument that the confessions were involuntary.

A. Yes, they did. Made no matter to them.

Q. Did they make you sign another statement?

A. Yes.

Q. After you had already made a request for a lawyer?

A. Yes, sir.

Q. In writing?

A. Yes, sir.

Q. Did they make you say things on a tape recorder?

A. It was either that or take the same treatment that night they said Friday night, and I just told them a pack of lies to get them off me.

Q. And this was after you made a request for a lawyer in writing?

A. Yes, sir, it was.

Q. Two different statements was given after you made a request for a lawyer?

A. Yes, sir.

Q. Were you forced to make these statements?

A. Same thing as Friday night, yes, sir.

Q. Did they honor your request for a lawyer?

A. They didn't honor me a bit, because any way, or form or fashion.

*State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978), is controlling on this point. We held, in the syllabus of that case:

1. "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of all or a part of an offense were voluntary before such may be admitted into the evidence of a criminal case." Syl. pt. 5, *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975).

2. It is a well-established rule of appellate review in this state that a trial court has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review.

3. A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.

In the case now before us the trial judge did hold an extensive *in camera* hearing on the issue of the voluntariness of the defen-

dant's statements. The evidence presented by the State at that hearing overwhelmingly supported the trial judge's finding that the statements were made voluntarily, knowingly and intelligently. That finding was not against the weight of the evidence and was not plainly wrong. We will not, therefore, disturb the trial judge's finding that the statements were voluntarily made on this appeal.

In *State v. Vance, supra,* we also adopted the "Massachusetts rule" regarding jury instructions on the issue of the voluntariness of confessions. "We adopt the 'Massachusetts' or 'humane' rule whereby the jury can consider the voluntariness of the confession, and we approve of an instruction telling the jury to disregard the confession unless it finds that the State has proved by a preponderance of the evidence it was made voluntarily." Syl. pt. 4, *State v. Vance, supra.* Such an instruction was given in this case.[4]

We hold, therefore, that the trial judge did not abuse his discretion in allow-

---

4. The judge gave the following instruction:

The Court instructs the jury that it is the law of the State of West Virginia that evidence in a criminal case which relates to any statement or act or omission claimed to have been made or done by a defendant outside of Court and after a crime has been committed, must be considered with great caution and weighed with great care. All such evidence should be disrgarded [*sic*] in it's entirety unless the evidence in the case showing how the statement or act was obtained convinces the jury beyond a reasonable doubt that the statement or act was knowingly made or done.

In this connection, a statement or act is knowingly made or done, only if it is made or done voluntarily and intentionally and not because of mistake, accident, innocent reason, pressure of hope or fear to confess as facts things which are not true in an effort to secure a promised reward or to avoid threatened punishment.

Therefore, the Court instructs the jury that in determining whether any statement or act claimed by the State to have been made or done by Roundtree Riley Goodmon outside of Court after the commission of the crime of which he is accused was knowingly made or done, the jury should consider the following:

Roundtree Riley Goodmon's age, training, education and physical and mental condition; his treatment while in custody or under interrogation as shown by all the evidence in this case; all other circumstances in evidence surrounding the making of any statement or the

doing of any act, including whether, before the statement or act was made or done, the defendant knew or had been told and understood that he was not obliged or required to make or do the statement or act claimed to have been made or done by him; that he could terminate the interrogation or statement at any time; that any statement or act which he might make or do could be used against him in Court; that he was entitled to the assistance of legal counsel before making any statement or before doing any act; and that if he was without money or means to retain legal counsel of his own choice, an attorney would be appointed to advise and represent him free of cost or obligation before any interrogation was conducted.

And the Court further instructs the jury that if the evidence of the taking of the statement in this case does not convince the jury beyond a reasonable doubt that any statement, act done by Roundtree Riley Goodmon, was made or done voluntarily and intentionally, then and in that event, you should disregard it entirely.

This instruction went beyond what we required in *State v. Vance, supra,* in that it instructed the jury that they must find that the State had proved the voluntariness of the confession beyond a reasonable doubt. *State v. Vance* only requires proof by a preponderance of the evidence.

ing the introduction of the first written confession into evidence as part of the State's case. We also accept the trial judge's finding that all of the confessions in this case were made knowingly, intelligently and voluntarily.

The second written confession and the tape recorded statement, however, were clearly not admissible as evidence in the State's case in chief under our holding in Syl. pt. 1 of *State v. McNeal*, 162 W.Va. 550, 251 S.E.2d 484 (1978):

> Once a suspect in custody has expressed his clear, unequivocal desire to be represented by counsel, the police must deal with him as if he is thus represented. Thereafter, it is improper for the police to initiate any communication with the suspect other than through his legal representative, even for the limited purpose of seeking to persuade him to reconsider his decision on the presence of counsel.

The question in the case before us is, however, whether a confession that is voluntarily given, but is inadmissible as part of the State's case in chief because it was made after the defendant had requested counsel, is admissible as impeachment evidence. This is a question of first impression in this jurisdiction. The defendant argued that once the confession is held to be inadmissible, for whatever reason, it is inadmissible for any and all purposes. The State argues that the confessions could properly be used for the limited purpose of impeachment because they were voluntarily given.

The United States Supreme Court has considered this question.[5] In *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the defendant's confession was inadmissible as part of the State's case in chief under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). At his trial, however, the defendant, Harris, testified in his own defense. From the stand he denied the crime charged. On cross-examination the prosecution questioned the defendant about his prior inconsistent statements regarding the crime, i.e., the confession which had been held to be inadmissible. The trial judge instructed the jury that the statements attributed to the defendant were not to be considered on the issue of the guilt of the defendant but only on the issue of his credibility. The Supreme Court held that the use of the confession as impeachment evidence was proper:

> Petitioner's testimony in his own behalf ... contrasted sharply with what he told the police shortly after his arrest. The impeachment process here undoubtedly provided valuable aid to the jury in assessing petitioner's credibility, and the benefits of this process should not be lost, in our view, because of the speculative possibility that impermissible police conduct will be encouraged thereby. Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.
>
> Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. (Citation omitted). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did not more than utilize the traditional truth-testing devices of the adversary process.

401 U.S. at 225, 91 S.Ct. at 645.

In *Oregon v. Haas*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the United States Supreme Court addressed a factual situation very similar to the one presently before us. In that case the defendant's confession was suppressed because it was made after he had requested a lawyer. The defendant testified at his trial. His

---

**5.** Generally, the United States Supreme Court has allowed suppressed evidence to be used for impeachment purposes where the suppression of the evidence was the result of a violation of constitutional criminal procedure. *See Harris v. New York, infra* (Fifth Amendment); *Oregon v. Haas, infra*, (Sixth Amendment); *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) (Fourth Amendment). *Cf. Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (involuntary confession not admissible for impeachment purposes).

testimony was contrary to his prior statements to the police. The State then introduced the prior statements in rebuttal. The trial judge instructed the jury about the limited purpose of the rebuttal evidence. The jury was told that the statements of the defendant offered in rebuttal were not to be used as proof of the defendant's guilt but only as evidence bearing on the credibility of the defendant as a witness. The Supreme Court reaffirmed their holding in *Harris v. New York, supra,* and held that the limited use of the confession in the case had been proper.

There is one difference between the case presently before us and the situation in *Oregon v. Haas, supra.* In *Haas,* as in *Harris,* the confessions were admitted on the general question of the credibility of the defendant as a witness. In this case, the trial judge admitted the confessions for a more limited purpose. Before the second

written statement and the tape recorded statement were admitted the trial judge instructed the jury as follows: "I am going to permit this reading [of the second confession and the tape recorded statement] for the sole purpose so you can decide whether or not threats or coercion were given to the Defendant.... It's for the sole purpose of whether or not he was threatened or coerced. ..." [6]

■ We consider the reasoning of *Harris v. New York, supra,* and *Oregon v. Haas, supra,* to be sound.[7] We therefore hold that where a person who has been accused of committing a crime makes a voluntary statement that is inadmissible as evidence in the State's case in chief because the statement was made after the accused had requested a lawyer, the statement may be admissible solely for impeachment purposes when the accused takes the stand at his trial and offers testimony con-

---

**6.** Also, as part of his charge to the jury at the close of the evidence the trial judge gave the following instruction:

> The Court instructs the jury that the second statement and taped recording of Roundtree Riley Goodmon was offered by the State in rebuttal not to establish the truth of the subject matter but to allow the jury to determine in their own minds the reactions of the defendant in the statement as to whether they were willingly given and further, the jury may consider the tone of voice of the defendant and participating officers with their speech when they testified before you, the jury, in open court.

**7.** Most states have adopted the rules announced by the United States Supreme Court in *Harris v. New York, supra,* and *Oregon v. Haas, supra.* See, e.g., *Medlar v. State,* 384 So.2d 1152 (Ala.Cr. App.1980); *State v. Durham,* 111 Ariz. 19, 523 P.2d 47 (1974); *Zachry v. State,* 260 Ark. 97, 538 S.W.2d 25 (1976); *State v. Anonymous,* 30 Conn. Sup. 181, 307 A.2d 785 (1974); *People v. Shoffner,* 627 P.2d 246 (Colo.1981); *Foraker v. State,* 394 A.2d 208 (Del.1978); *Nowlin v. State,* 346 So.2d 1020 (Fla.1977), *overruling Crawford v. State,* 70 Fla. 323, 70 So. 374 (1915); *Johnson v. State,* 258 Ind. 683, 284 N.E.2d 517 (1972); *State v. Donelson,* 302 N.W.2d 125 (Iowa 1981); *State v. Robinson,* 4 Kan.App.2d 428, 608 P.2d 1014 (1980); *State v. Kent,* 371 So.2d 1319 (La.1979); *State v. Williams,* 271 So.2d 857 (La.1973); *State v. Melvin,* 390 A.2d 1024 (Me.1978); *State v. Myers,* 345 A.2d 500 (Me.1975); *Harris v. State,* 286 Md. 444, 408 A.2d 1302 (1979); *State v. Franklin,* 281 Md. 51, 375 A.2d 1116 (1977); *Commonwealth v. Mahnke,* 368 Mass. 662, 335

N.E.2d 660 (1975); *People v. Nkomo,* 75 Mich. App. 71, 254 N.W.2d 657 (1977); *State v. Clark,* 296 N.W.2d 359 (Minn.1980); *Booker v. State,* 326 So.2d 791 (Miss.1976), *modifying Ladner v. State,* 231 Miss. 445, 95 So.2d 468 (1957); *State v. Smith,* 168 Mont. 93, 541 P.2d 351 (1975); *State v. Mitchell,* 611 S.W.2d 211 (Mo.1981); *State v. Kelley,* 120 N.H. 14, 413 A.2d 300 (1980); *State v. Miller,* 67 N.J. 229, 337 A.2d 36 (1975); *State v. Trujillo,* 93 N.M. 724, 605 P.2d 232 (1979); *People v. Washington,* 51 N.Y.2d 214, 433 N.Y.S.2d 745, 413 N.E.2d 1159 (1980); *State v. Escamilla,* 195 Neb. 558, 239 N.W.2d 270 (1976); *State v. Bazis,* 190 Neb. 586, 210 N.W.2d 919 (1973); *Johnson v. State,* 92 Nev. 405, 551 P.2d 241 (1976); *State v. Huntley,* 284 N.C. 148, 200 S.E.2d 21 (1973); *State v. Bryant,* 280 N.C. 551, 187 S.E.2d 111 (1972); *State v. Iverson,* 187 N.W.2d 1 (N.D.1971); *Bowman v. State,* 585 P.2d 1373 (Okla.Cr.App.1978); *State v. Mercado,* 263 S.C. 304, 210 S.E.2d 459 (1974); *Wilson v. State,* 537 S.W.2d 446 (Tenn.Cr.App.1975); *Duncantell v. State,* 563 S.W.2d 252 (Tex.Cr.App. 1978); *Perez v. State,* 466 S.W.2d 283 (Tex.Cr. App.1971); *State v. Kish,* 28 Utah 2d 430, 503 P.2d 1208 (1972); *Santmier v. Commonwealth,* 217 Va. 318, 228 S.E.2d 681 (1976); *State v. Miner,* 22 Wash.App. 480, 591 P.2d 812 (1979); *State v. Mendoza,* 96 Wis.2d 106, 291 N.W.2d 478 (1980). Our extensive research into this area has revealed only two states which have rejected the rule on state constitutional grounds. *See People v. Disbrow,* 16 Cal.3d 101, 127 Cal. Rptr. 360, 545 P.2d 272 (1976), *overruling People v. Nudd,* 12 Cal.3d 204, 115 Cal.Rptr. 372, 524 P.2d 844 (1974); *State v. Santiago,* 53 Haw. 254, 492 P.2d 657 (1972).

tradicting the prior voluntary statement knowing that such prior voluntary statement is inadmissible as evidence in the State's case in chief. In accordance with the holdings in *Harris* and *Haas*, the confessions are admissible impeachment evidence on the issue of the general credibility of the defendant as a witness. That being so, it was not error for the trial judge in this case to allow use of the second written statement and the tape recorded statement for the more limited purpose of testing the defendant's credibility on the issue of the voluntariness of the statements.

## III

## THE KNIFE

■ The knife which the troopers recovered from the defendant's home was introduced as evidence at his trial. The defendant argues that the knife was obtained as a direct result of the first written confession and should have been suppressed as the fruit of the poisonous tree. We have upheld the trial judge's ruling on the voluntariness and admissibility of the first written confession. It follows that the knife was properly admitted into evidence.

## IV

## INEFFECTIVE ASSISTANCE OF COUNSEL

The defendant argues that he was denied the effective assistance of counsel at his trial because his attorney did not move for a mistrial when it was discovered that the second written confession and the tape recorded statement were made after the defendant had requested a lawyer. The State argues that the defense attorney did an excellent job of representing the defendant below and that his performance exceeded the standard set in Syl. pt. 19 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974):

> In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

Upon a review of the entire record in this case we agree, generally, with the State that the defendant's trial counsel did measure up to the standard set in *State v. Thomas, supra*. The defendant's trial counsel made, and forcefully argued, motions for change of venue and suppression of evidence. He moved for a directed verdict at the close of the State's evidence. He filed a motion after trial to set aside the verdict and award a new trial. That motion contained a detailed statement of error. Indeed, the defendant's counsel on this appeal has adopted that statement of error as his own.

■ The specific instance alleged by the defendant to constitute ineffective assistance of counsel is covered by Syl. pt. 21 of *State v. Thomas, supra*:

> Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused.

The defendant's trial counsel did not move for a mistrial after it was discovered that the second written confession and the tape recorded statement were inadmissible. The State had already laid the foundation for admission of those items although the written statement had not been read nor had the tape recorded statement been played to the jury. Counsel for the defendant, instead of moving for a mistrial, asked the judge to explain to the jury why the statements, which had been referred to, were not admitted. This request was

granted.[8] This was a tactical decision on the part of the defendant's trial attorney. As the trial judge noted, suppression of the second written statement and the tape recorded statement, along with the explanation given by the trial judge to the jury, gave the defendant a good argument against the first written confession.[9] The defendant's trial counsel did make that argument to the jury. The fact that the jury, apparently, did not accept this argument does not mean that the defendant did not receive effective assistance of counsel. The defendant's trial counsel decided to exploit the advantage that the possible error gave him in the trial which was underway rather than moving for a mistrial. Such a motion could have resulted in a second trial where no mention would be made of the second written confession and tape recorded statement. The defendant's argument against the voluntariness of the first, admissible, written confession would have been thereby weakened at the second trial. That was not ineffective assistance but rather a valid strategy decision.

For the foregoing reasons the judgment of the Circuit Court of Lincoln County is hereby affirmed.

Affirmed.

McGRAW, Justice, dissenting:

I dissent for the reason that article 3, section 5 of the Constitution of the State of West Virginia provides: "No person shall ... be compelled to be a witness against himself ..." and the Fifth Amendment to the Constitution of the United States provides: "No person shall ... be compelled in any criminal case to be a witness against himself ..." The test for the voluntariness of a confession under the language of these constitutional provisions ought to be whether or not the defendant agrees at trial to the use of the words from his own mouth against him. By approaching these constitutional provisions with fidelity, we could lessen the number of appeals flowing from the abuse of this plain language.

It is undisputed that the appellant requested a lawyer at his arraignment on January 20, 1979, and that a "confession" was elicited prior to the fulfillment of that request. Under article 3, section 5 of the West Virginia Constitution, this incriminating statement should not have been used at trial for any purpose, irrespective of the trial court's determination that the statement was "voluntary." *See State v. Bradley*, 163 W.Va. 148, 255 S.E.2d 356 (1979); *State v. McNeal*, 162 W.Va. 550, 251 S.E.2d 484 (1978). *See also, Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (Brennan, J., dissenting); *People v. Disbrow*, 16 Cal.3d 101, 127 Cal.Rptr. 360, 545 P.2d 272 (1976); *State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1972).

I am authorized to state that Justice Harshbarger joins me in this dissenting opinion.

---

8. The trial judge told the jury:
   The Court has ... ruled that because of a question of law [the second written confession and the tape recording] were not admissible in the State's main case because between the time of the giving of the second statement the Defendant had requested a lawyer and the lawyer was not present when they were given.

9. The trial judge observed that the defendant could argue: "[T]hat since the Court excluded these final two statements that, therefore, the first one must be no good either because the Defendant alleges that he was coerced and intimidated and said he wanted a lawyer, and, in fact, these people wouldn't give him a lawyer."