## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 17-0636** (Berkeley County, 16-F-50)

**Clairesse Felipe,**
**Defendant Below, Petitioner**

**FILED**
**March 18, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Clairesse Felipe[1] was sentenced to nine to forty-five years in the penitentiary on four felony counts[2] arising from her involvement in a deadly automobile crash in 2015. On appeal, Felipe raises five assignments of error that she contends merit reversal of her conviction and retrial. The State of West Virginia[3] urges us to uphold Felipe's conviction and sentence.

Upon consideration of the standards of review, the briefs, the record presented, and oral argument, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

### I. Facts and Procedural History

On the night of July 24, 2015, Clairesse Felipe (Felipe) drove Joeimarie Hoffman (Hoffman), Ashley Jenkins (Jenkins) and Ashley Long (Long) to Stiletto's, a nightclub in Martinsburg, West Virginia, in Felipe's vehicle. Early the next morning, the four returned to Felipe's car, with Long in the driver's seat, Hoffman in the passenger's seat, and Felipe and Jenkins in the backseat. After leaving the club's parking lot, Felipe and Long switched places, putting Felipe in the driver's seat, and Jenkins and Long in the backseat.[4] Hoffman remained in the front passenger seat.

---

[1] Felipe is represented by counsel Phillip C. Isner, Esq., and David C. Fuellhart, Esq.

[2] Felipe was also sentenced to two years and one hundred days in jail on four misdemeanor convictions.

[3] Patrick Morrissey, Esq., Attorney General, Robert L. Hogan, Esq., Assistant Attorney General, and Shannon Kiser, Esq., Assistant Attorney General, represent the State of West Virginia.

[4] At trial, Felipe maintained that she was not the driving the vehicle when it crashed. On appeal, Felipe does not challenge the sufficiency of the evidence. Even if she did raise such a challenge, we would still view the evidence in the light most favorable to the prosecution because

After Felipe sped away, she clipped the rear of another automobile and lost control of her own. Felipe's vehicle hit a telephone pole and a concrete wall, then rolled and flipped. Once the automobile stopped, Felipe and a seriously-injured Hoffman escaped before the vehicle caught fire. Long and Jenkins did not escape and died in the fire. A passing motorist stopped for Felipe and Hoffman. Felipe asked the driver to take them to Frederick, Maryland, but the driver refused and instead dropped them off at a nearby Sheetz convenience store. While at Sheetz, Felipe told Hoffman to tell authorities that Hoffman, Jenkins, or Long—but not Felipe—was driving her automobile.

State Trooper M.W. Kennedy II (Trooper Kennedy) was on his way to the accident scene when dispatch redirected him to Sheetz. He arrived there at 3:34 a.m. Police and paramedics were already there, treating Hoffman in an ambulance. Felipe stood at the rear of the ambulance, refusing medical treatment. Trooper Kennedy approached Felipe and asked her if she had been in an accident. She confirmed that she thought she had been. He asked if she knew who had been driving. Felipe said she did not know and that she could not remember anything else. Trooper Kennedy told her to stay by the road or the ambulance. He then spoke briefly to Hoffman, who stated that she had been in a vehicle accident and that Felipe was the driver. Hoffman was later air-lifted for emergency treatment. Her injuries were consistent with those caused by a passenger-side seat belt.

A deputy authorized Felipe to go inside and freshen up in the Sheetz bathroom. When Felipe did not return, it became apparent that she had fled. Trooper Kennedy returned to his cruiser and went to a nearby 7-11 store, where a man waved him down. Trooper Kennedy found Felipe inside the store. He arrested her for obstructing justice, cuffed her, and put her in his cruiser. Felipe became belligerent. Trooper Kennedy's cruiser did not have a cage in it, so he took Felipe back to the accident scene and put her in the cruiser of his colleague, Trooper David Simerly (Trooper Simerly), which had a cage. Once in Trooper Simerly's cruiser, Felipe fell asleep.

Trooper Simerly took Felipe to the Berkeley Medical Center for medical clearance and a forensic blood draw. Upon arrival, Trooper Simerly woke Felipe, who then began asking him what was happening at the crash scene and how her friends were. Trooper Simerly watched as Felipe correctly answered hospital staff's orientation questions about the time, her location, and the identity of the president of the United States. Based on the results of the forensic blood draw, Felipe's blood alcohol content was .17.

While at Berkeley Medical Center, Felipe also made statements to Trooper Simerly that led him to believe she was "feeling guilty," so, at 5:49 a.m., he read Felipe her *Miranda*[5] rights. She indicated that she understood those rights, then waived them. Trooper Simerly also read Felipe the West Virginia Implied Consent statement, which she signed. She then made a series of statements and admissions, including that: (1) she should not have been driving; (2) she originally had a designated driver, but that person was too drunk to drive; (3) her friends had made her drive;

---

it prevailed at the jury trial, below. *See* Syl. Pt. 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Therefore, we present the facts in the light most favorable to the State.

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

(4) at the time of the crash, Jenkins and Long were in the vehicle's rear seat and Hoffman was in the passenger seat; (5) "[she] wasn't about to drive all the way to Frederick under the influence, that's why [she] got a reservation at the Hamptons. [She] was just going to drive there and [her] friends were going to take [her] car from there,"[6] (6) she was drunk; (7) she could finish an entire fifth of liquor by herself; and (8) she had a prior DUI from Washington, D.C.

Trooper Simerly took Felipe to the Eastern Regional Jail. On the way there, Felipe stated that she wished her friends had not told her that they wanted to go to Denny's because she was "a hoe for food." If she had not been so hungry, she stated, she would not have been speeding.

In February 2016, Felipe was indicted on two counts of felony DUI resulting in death, stemming from the deaths of Long and Jenkins; felony DUI resulting in serious bodily injury, stemming from the injuries sustained by Hoffman; felony leaving the scene of an accident resulting in death; leaving the scene of an accident with property damage; reckless driving, obstructing an officer; and fleeing law enforcement by means other than a vehicle.

Felipe filed several motions in limine. First, she moved to suppress the statements she made to Trooper Simerly on the morning of July 25, 2015 because she claimed she was too intoxicated to have made a knowing and voluntary waiver of her *Miranda* rights. Second, she moved to exclude the videotaped deposition of Trooper Kennedy, arguing that she had been unable to cross-examine him regarding several documents that the State had not given to her counsel before the deposition. The circuit court denied Felipe's motion to suppress her July 25, 2015 statements and to exclude Trooper Kennedy's videotaped deposition.[7] The circuit court did exclude, however, and without objection from the State, a recorded statement Trooper Kennedy took from Felipe on July 26, 2015 in the Eastern Regional Jail. Felipe had already been arraigned and requested counsel when Trooper Kennedy took the statement, but he did not know that at the time. All agreed that Felipe's statement could not be used in the State's case-in-chief. Finally, the parties stipulated that Felipe's prior criminal record was not admissible at trial.

Trial began on March 21, 2017. During opening statements, Felipe's counsel described her to the jury as "a 34-year-old woman; she has a daughter; she's from a good family. [Felipe] does not have a perfect background, okay, or a perfect record." Felipe's counsel also told the jury that they would "hear an audio interview that Trooper Kennedy had with [Felipe the] day after the crash when she was incarcerated." At a sidebar, the circuit court asked the State if it wished to move for a mistrial, but the State declined. Trial proceeded, with the State offering testimony from Hoffman and Trooper Simerly, among others, and Trooper Kennedy's previously-recorded deposition.

---

[6] Felipe also asked Trooper Simerly how she might cancel that hotel reservation.

[7] Trooper Kennedy was unable to appear for trial due to military service. West Virginia Rule of Criminal Procedure 15 permits testimony via deposition in exceptional circumstances. Felipe does not challenge that Trooper Kennedy's military service presents a justifying circumstance.

Felipe testified on her own behalf. On cross-examination, she denied driving the vehicle when it crashed. While cross-examining Felipe, the State moved to admit portions of Felipe's July 26, 2015 recorded statement for impeachment purposes. Felipe's counsel objected that the statement was beyond the scope of direct examination, but the circuit court granted the State's motion. The circuit court did not caution the jury that those portions of Felipe's statement were not admissible as evidence of guilt, only as impeachment. But, neither Felipe's counsel nor the State requested that instruction. Later, during deliberations, the jury asked whether the audio recording was submitted into evidence, and the circuit court responded that the jury could not have the recording, and that it would have to recall the evidence.

The jury returned a guilty verdict on all eight counts. The circuit court conducted a sentencing hearing in May of 2017 and entered an order in June sentencing Felipe as follows: Count One, Felony DUI Resulting in Death, 3–15 years, $1,000 fine; Count Two, Felony DUI Resulting in Death, 3–15 years, $1,000 fine; Count Three, Felony DUI Resulting in Serious Bodily Injury, 2–10 years, $1,000 fine; Felony Leaving the Scene of an Accident Resulting in Death, 1–5 years; Leaving the Scene of an Accident with Property Damage, 10 days in jail; Reckless Driving, 90 days in jail; Obstructing an Officer, 1 year in jail; Fleeing a Law Enforcement Officer By Means Other Than Vehicle, 1 year in jail. The circuit court ordered that Felipe serve all sentences consecutively and that she pay $24,637.34 in restitution. Felipe now appeals from that sentencing order.

## II. Analysis

Felipe poses five assignments of error. First, she argues that the circuit court erred by admitting the statements she made to Trooper Simerly at Berkeley Medical Center because she was too intoxicated to waive her *Miranda* rights voluntarily. Second, she argues that the circuit court erred when it did not give the jury a limiting instruction after admitting her previously-excluded recorded statement for impeachment purposes. Third, she argues that the circuit court erred by admitting Trooper Kennedy's video deposition when Felipe did not have an opportunity to cross-examine him regarding certain evidence. Fourth, she argues that the circuit court committed plain error when it did not declare a mistrial after Felipe's counsel referenced her "record" during his opening statement. Finally, Felipe argues that the circuit court committed plain error by not declaring a mistrial after Felipe's counsel mentioned during his opening statement that the jury would hear Felipe's audio statement, which the circuit court had already excluded from evidence.

### A. Assignments of Error One and Three

Before trial, the circuit court denied Felipe's motions to suppress incriminating statements she made to Trooper Simerly the morning following the crash and Trooper Kennedy's video deposition. Felipe now challenges those rulings in her first and third assigned errors.

#### (1) Assignment of Error One

Felipe argues that the circuit court erred by denying her motion to suppress incriminating statements she made to Trooper Simerly while at the medical center and en route to the Eastern Regional Jail. Felipe contends that she was too intoxicated at the time to have voluntarily waived

4

her *Miranda* rights. The State responds that the circuit court correctly concluded that, based on the totality of the circumstances, Felipe was not so intoxicated that her waiver was involuntary.

We have held that "[w]hether an extrajudicial inculpatory statement is voluntary or the result of coercive police activity is a legal question to be determined from a review of the totality of the circumstances."[8] As to intoxication, we have held that "[a] claim of intoxication may bear upon the voluntariness of a defendant's confession, but, unless the degree of intoxication is such that it is obvious that the defendant lacked the capacity to voluntarily and intelligently waive his rights, the confession will not be rendered inadmissible."[9]

When reviewing a circuit court's suppression decision, we apply a multi-layered standard of review.

> [W]e first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.[10]

We find substantial evidence in the record to support the circuit court's ruling that Felipe was not so intoxicated that her *Miranda* waiver was involuntary. In considering the circumstances surrounding Felipe's waiver, the circuit court expressly recognized Felipe's decision to flee from the accident scene and her later decision to flee from Trooper Kennedy at Sheetz. It also acknowledged that Felipe rested in Trooper Simerly's car on the way from the accident scene to the medical center, a trip that lasted approximately fifteen to thirty minutes. And, the circuit court recognized that Felipe was cognizant of her situation and surroundings when questioned by medical center staff.

Additionally, the circuit court heard Trooper Kennedy's testimony at the suppression hearing that, even at Sheetz, Felipe "seemed aware of herself and the general time and what was going on around her." While Trooper Kennedy acknowledged that Felipe "was definitely intoxicated," he also testified that "[s]he wasn't completely bewildered," that she conversed with paramedics and "seemed very much aware of where she was and what was going on."

---

[8] Syl. Pt. 2, *State v. Bradshaw*, 193 W. Va. 519, 457 S.E.2d 456 (1995).

[9] Syl. Pt. 1, *State v. Hall*, 174 W. Va. 599, 328 S.E.2d 206 (1985).

[10] *State v. Lilly*, 194 W. Va. 595, 600, 461 S.E.2d 101, 106 (1995) (internal citations and notes omitted); *see also State v. Farley*, 192 W. Va. 247, 252–53, 452 S.E.2d 50, 55 (1994).

5

Felipe argues that her .17 blood-alcohol level necessarily means that any waiver cannot have been voluntarily made, but offers no authority supporting such a bright-line rule. Regardless, in light of Felipe's flight from the crash scene and Sheetz, responsiveness, and orientation following the crash, we see no error in the circuit court's conclusion that the totality of the circumstances demonstrated Felipe's capacity to voluntarily waive her *Miranda* rights, notwithstanding her intoxication.[11]

### (2) Assignment of Error Three

Felipe argues that the circuit court's decision to permit the jury to view Trooper Kennedy's videotaped deposition violated her right of meaningful cross-examination[12] and West Virginia Rule of Evidence 403 because information regarding Hoffman's injuries and criminal record and the forensic report of Felipe's blood alcohol level were not disclosed by the State until after the deposition took place. The State responds that Felipe's counsel fully deposed Trooper Kennedy in Felipe's presence. The State further argues that, even though information pertaining to Hoffman's injuries and criminal record and the forensic report was disclosed after Trooper Kennedy's deposition, Felipe was not denied of the opportunity for *meaningful* cross-examination.[13]

We review the circuit court's decision to admit Trooper Kennedy's deposition testimony for abuse of discretion, although we review *de novo* the legal analysis underlying the decision.[14]

We find no abuse of discretion in the circuit court's denial of Felipe's motion to exclude Trooper Kennedy's video deposition from evidence. First, Felipe's counsel, Mr. Lambert, did cross-examine Trooper Kennedy regarding the forensic report during his deposition for approximately two minutes.

Second, we agree with the State that cross-examining Trooper Kennedy regarding Hoffman's injuries and criminal record could not have proved meaningful. As the State observes, Trooper Kennedy is not a medical professional and he did not provide medical treatment to Hoffman. On the other hand, Hoffman testified at trial regarding her injuries and specifically

---

[11] *See State v. Depew*, No. 13-1214, 2014 WL 5546062, *2 (W. Va. Nov. 3, 2014) ("The circuit court recognized that just because an individual has used marijuana does not mean they are intoxicated or incapable of giving a statement."); *State v. Moore*, 193 W. Va. 642, 648, 457 S.E.2d 801, 807 (1995) (affirming circuit court's denial of suppression motion where defendant, "[d]espite mild retardation and intoxication . . . still had the presence of mind to give the officer who initially detained him on the scene a fictitious name"); and *State v. Hall*, 174 W. Va. 599, 600, 328 S.E.2d 206, 208 (1985) (affirming circuit court's denial of suppression motion where arresting officers indicated that defendant "appeared rational and coherent" when they arrived at crime scene).

[12] *See* Syl. Pt. 6, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006).

[13] *See* Syl. Pt. 1, *State v. Blair*, 158 W. Va. 647, 214 S.E.2d 330 (1975).

[14] *Guthrie*, 194 W. Va. at 680, 461 S.E.2d at 186 (citations omitted).

testified that some of them were caused by a passenger-side seatbelt. On cross-examination, Felipe's counsel questioned Hoffman about her "seatbelt injury." We simply do not see how questioning Trooper Kennedy on this issue could have yielded more meaningful testimony.

Likewise, Felipe does not explain how the availability of Hoffman's criminal record would have affected her cross-examination of Trooper Kennedy. Again, Hoffman testified at trial, so if that record had any utility, it would have been useful with Hoffman and not with Trooper Kennedy. For those reasons, we find that the circuit court did not abuse its discretion by denying Felipe's motion to exclude Trooper Kennedy's videotaped deposition.

## B. Assignments of Error Two, Four, and Five

Because Felipe's trial counsel either made the alleged error or did not make timely objections below, Felipe's second, fourth, and fifth assigned errors are reviewable only for plain error.[15] "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings."[16] "To be 'plain,' an error must be 'clear' or 'obvious.'"[17]

### (1) Assignment of Error Two

We turn first to Felipe's second assigned error, the circuit court's failure to give the jury a limiting instruction after admitting for impeachment purposes portions of Felipe's previously-excluded, July 26, 2015 recorded statement. In *State v. Goodmon*, we held that:

> [w]here a person who has been accused of committing a crime makes a voluntary statement that is inadmissible as evidence in the State's case in chief because the statement was made after the accused had requested a lawyer, the statement may be admissible solely for impeachment purposes when the accused takes the stand at his trial and offers testimony contradicting the prior voluntary statement knowing that such prior voluntary statement is inadmissible as evidence in the State's case in chief.[18]

Felipe acknowledges that, under *Goodmon*, her recorded statement was admissible for impeachment purposes. She argues, however, that the lack of a jury instruction is plain error meriting reversal. We disagree. Rule 105 of the West Virginia Rules of Evidence ("Limiting Evidence That Is Not Admissible Against Other Parties or for Other Purposes") states: "If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, *on timely request*, must restrict the evidence to its proper

---

[15] *See* Syl. Pt. 7, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).

[16] Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

[17] *Id*. at Syl. Pt. 8, in part.

[18] Syl. Pt. 4, *State v. Goodmon*, 170 W. Va. 123, 290 S.E.2d 260 (1981).

7

scope and instruct the jury accordingly."[19] Here, Felipe's counsel did not make a "timely request" to the circuit court to instruct the jury on the limited purpose for which Felipe's recorded statement was admitted. Accordingly, the plain error doctrine is not triggered, here, as the circuit court did not err under Rule 105.

Moreover, even if the circuit court did err, the error was not plain. Felipe cites *Oregon v. Hass*[20], *Harris v. New York*[21], and *Goodmon*[22] for the proposition that a limiting instruction is required when otherwise inadmissible statements are admitted for impeachment purposes. In each of those cases, the appellate court observed that the trial court issued a limiting instruction following the introduction of the otherwise inadmissible statements. But, the courts did not explicitly instruct future trial courts to do the same. And, in *Haas*, defense counsel specifically requested the trial court to instruct the jury that the defendant's prior statement should not be considered evidence of his guilt. Thus, counsel in that case properly preserved the issue for full review on direct appeal, which is not the case here.[23]

Felipe also cites the following language from our 1990 decision, *State v. Collins*,[24] to support her contention that the circuit court erred plainly: "Moreover, it is apparent from *McGee* that the trial court has an obligation to instruct the jury that the impeaching testimony may only be considered as bearing on the witness's credibility and not as substantive evidence." That quoted language from *Collins*, however, arose in the wholly different context of the admission of a *witness's* prior inconsistent statement for impeachment purposes and the Court did not elevate it to a syllabus point. In sum, Felipe's second assigned error does not merit reversal under the plain error doctrine.

---

[19] W. Va. R. of Evid. 105 (emphasis added).

[20] 420 U.S. 714, 717 (1975) ("The trial court, at the request of the defense, then advised the jury that the portion of Officer Osterholme's testimony describing the statement made by Hass to him 'may not be used by you as proof of the Defendant's guilt . . . but you may consider that testimony only as it bears on the (credibility) of the Defendant as a witness when he testified on the witness stand.'").

[21] 401 U.S. 222, 223 (1971) ("The trial judge instructed the jury that the statements attributed to petitioner by the prosecution could be considered only in passing on petitioner's credibility and not as evidence of guilt.").

[22] 170 W. Va. at 123, 290 S.E.2d at 260.

[23] *See Haas*, 420 U.S. at 717. It is not apparent from the opinions in *Harris* or *Goodmon* whether defense counsel requested a limiting instruction regarding the use of the defendant's previously excluded statements for impeachment, only.

[24] *State v. Collins*, 186 W. Va. 1, 18, 409 S.E.2d 181, 189 (1990) (citing Syl., *State v. McGee*, 160 W. Va. 1, 230 S.E.2d 832 (1976) (recognizing where defendant's credibility is impeached by evidence of prior criminal conviction, trial court must use a balancing test and instruct jury sua sponte that evidence is solely for impeachment purposes)).

8

### (2) Assignment of Error Four

Felipe's fourth assignment of error is also subject to plain error review. During opening statements, Felipe's counsel said, "[Felipe] does not have a perfect background, okay, or a perfect record." Felipe argues that this reference violates the circuit court's ruling that Felipe's criminal history was inadmissible and West Virginia Rule of Evidence 404(b)(1).[25] The State responds that any reference to Felipe's criminal records was a "passing remark" that does not amount to error, did not prejudice Felipe, and did not alter the outcome of the trial.

Felipe's counsel's remark was vague and broad. He did not use the word "criminal." Rather, he told the jury that she did not have a "perfect background" or a "perfect record." Neither of those phrases necessarily communicated to the jury that Felipe's background or record was imperfect because of prior criminal acts. We agree with the State that Felipe's counsel's remarks were meant to humanize his client, and to acknowledge that she may be less than perfect,[26] which are both common goals for a defense counsel's opening statement. Again, given the vagueness of the reference to Felipe's "record," to the extent counsel erred, it was not plain, and so does not merit reversal of Felipe's conviction.

### (3) Assignment of Error Five

Plain error review also applies to Felipe's fifth assignment of error. During opening statements, Felipe's counsel told the jury that they would hear "an audio interview that Trooper Kennedy had with [Felipe] the day after the crash when she was incarcerated." Defense counsel did not offer any description of the content of that statement. Rather, he merely referenced its existence. The audio interview was, as of the time of opening statements, inadmissible.

Trial counsel's statement, however, cannot be an error because Felipe ultimately chose to testify on her own behalf, a choice that opened the door under *Goodmon*[27] for the State to introduce Felipe's otherwise-inadmissible recorded statement for impeachment purposes. So, while Felipe's recorded statement was inadmissible when trial counsel briefly referenced it during opening statements, it was admissible for impeachment later in the trial by virtue of Felipe's own testimony.

For the reasons discussed above, we affirm the June 26, 2017 sentencing order of the Circuit Court of Berkeley County.

Affirmed.

---

[25] Rule 404(b)(1) states: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

[26] We also agree with the State that "some defense counsel might wield [this] tool more artfully than Felipe's trial counsel did in this instance."

[27] Syl. Pt. 4, *Goodmon*, 170 W. Va. at 123, 290 S.E.2d at 260.

**ISSUED**:  March 18, 2019


**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison